[Cite as *State v. Adhikari*, 2017-Ohio-460.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103935**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SOM NATH ADHIKARI

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-594318-A

**BEFORE:** Celebrezze, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 9, 2017

**ATTORNEYS FOR APPELLANT**

John P. Luskin
John P. Luskin & Associates
5252 Meadow Wood Boulevard
Suite 121
Cleveland, Ohio 44124

Mary Catherine O'Neill
Jordan & Sidoti, L.L.P.
50 Public Square
Suite 1900
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Shannon M. Musson
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Som Nath Adhikari ("appellant"), brings this appeal challenging his convictions and sentence for sexual imposition. Specifically, appellant argues that his convictions are not supported by sufficient evidence and against the manifest weight of the evidence, and that the trial court's sentence is inconsistent with law. After a thorough review of the record and law, we affirm the trial court's judgment and remand for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶2} The instant matter arose from an incident at Five Guys Burgers and Fries ("Five Guys") in North Olmsted, Ohio, on January 13, 2015. At the time of the incident, appellant was 23 years old and was employed at Five Guys as a shift manager. The victim, E.B., was 17 years old and was also an employee at Five Guys. E.B. worked as a cashier and also prepared french fries and sandwiches.

{¶3} E.B. alleged that appellant made sexual advances to her as she was cleaning the men's bathroom. E.B. reported the incident to her mother and friend/coworker. E.B.'s mother reported the incident to the North Olmsted Police Department and drove to Five Guys to pick up E.B. After E.B.'s mother reported the incident to the police, officers responded to the Five Guys. Thereafter, E.B. and her mother went to the police station; they filed a police report and E.B. provided the officers with her statement.

{¶4} In Cuyahoga C.P. No. CR-15-594318-A, the Cuyahoga County Grand Jury

returned a six-count indictment charging appellant with (1) – (2) gross sexual imposition, in violation of R.C. 2907.05(A)(1); (3) – (4) sexual imposition, in violation of R.C. 2907.06(A)(1); (5) kidnapping, in violation of R.C. 2905.01(A)(4), with a sexual motivation specification; and (6) unlawful restraint, in violation of R.C. 2905.03(B). Appellant pled not guilty to the indictment.

{¶5} A jury trial commenced on October 29, 2015. Defense counsel moved for a Crim.R. 29 motion for a judgment of acquittal at the close of the state's case; the trial court denied the motion. Appellant testified in his own defense. Defense counsel renewed its Crim.R. 29 motion at the close of all the evidence; the trial court denied the motion. At the close of trial, the jury found appellant guilty of sexual imposition, third-degree misdemeanors, as charged in Counts 3 and 4; the jury found appellant not guilty of the remaining counts.

{¶6} On November 24, 2015, the trial court held a sentencing hearing. The trial court heard from appellant and the prosecutor. The trial court sentenced appellant to community control sanctions for a period of nine months, and informed appellant that a violation of the terms of his community control sanctions could result in 60 days in jail. Furthermore, the trial court classified appellant as a "Tier I sex offender/child offender registrant"; the trial court explained that appellant is required to register annually in person for a period of 15 years. The trial court's November 30, 2015 sentencing journal entry provided, in relevant part, "violation of the terms and conditions [of community control] may result in more restrictive sanctions, or a prison term of 6 month(s) as

approved by law."

{¶7} On December 21, 2015, appellant appealed his convictions and sentence. This court determined that it lacked jurisdiction to entertain the appeal because the trial court imposed a "blanket" sanction of community control for both sexual imposition counts and that the trial court's sentencing entry did not indicate that Counts 3 and 4 were merged for sentencing purposes. This court remanded the matter and instructed the trial court to either impose a separate sentence for each sexual imposition count or to issue a sentencing journal entry reflecting that the two counts had been merged.

{¶8} On October 12, 2016, the trial court issued a nunc pro tunc sentencing entry that provided, in relevant part, "[p]er court transcript; parties agree that Counts 3 and 4 merge and the state elects for [appellant] to be sentenced on Count 3."

{¶9} In the instant appeal, appellant assigns two errors for our review:

I. The guilty verdict cannot be upheld because evidence and testimony presented at trial did not establish appellant's guilty [sic] beyond a reasonable doubt.

II. The sentence imposed by the trial court cannot stand as it is inconsistent with law and statements made during the sentencing hearing.

## II. Law and Analysis

{¶10} Initially, we note that appellant's first assignment of error combines and confuses the issues of sufficiency of the evidence and manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 678

N.E.2d 541 (1997), paragraph two of the syllabus. While appellant's first assigned error primarily focuses on whether there was sufficient evidence before the trial court to sustain his sexual imposition convictions, it also encompasses manifest weight issues. Thus, we will apply both standards.

## A. Sufficiency

{¶11} Appellant argues that the state failed to prove his guilt beyond a reasonable doubt.

{¶12} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Thompkins* at 386.

{¶13} In the instant matter, appellant was convicted of sexual imposition, in violation of R.C. 2907.06(A)(1), which provides, in relevant part,

> [n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

{¶14} Appellant contends that the state failed to prove that a sexual touching occurred and that he acted recklessly.

### 1. Sexual Contact

{¶15} R.C. 2907.01 defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region or * * * breast for the purpose of sexually arousing or gratifying either person."

{¶16} Appellant argues that although there were other people in Five Guys at the time of the alleged incident, no one observed him act inappropriately towards E.B. Appellant further contends that E.B. made no attempt to alert anyone that she was being victimized.

{¶17} E.B. testified that appellant told her that he needed to show her how to properly clean the bathrooms. She explained that she had cleaned the bathrooms in the past, she knew how to clean the bathrooms, and she had never been disciplined for not cleaning the bathrooms properly. She thought it was "weird" when appellant told her that he needed to teach her how to clean the bathrooms.

{¶18} E.B. testified that after she scrubbed the bathroom floor, "[appellant] tapped my butt and then he shut the light off and locked the door and like groped me." She explained that appellant hit her buttocks with the end of a mop, kissed her, grabbed her chest from behind, rubbed her breasts, and attempted to place his hands in her pants. She stated, "[appellant] walked around me and he like put his hands on my chest and with his other hand he tried to like put his hands in my pants. And then he like stopped but I don't remember — like I don't know what triggered him to just kind of stop." Appellant touched E.B.'s chest with his right hand; appellant used his left hand to touch E.B.'s buttocks and attempted to put his left hand down the front of her pants.

**{¶19}** E.B. testified that when appellant locked the bathroom door and turned off the lights, she was startled and scared. She explained that she did not move and did not say anything to appellant because she was scared. When appellant turned off the lights, E.B. did not feel like she could leave the bathroom because she felt like she was stuck.

**{¶20}** E.B. testified that when appellant stopped touching her, he turned the lights on and asked if she was okay. E.B. explained that she acted like everything was fine and said she was okay because she was afraid and feared that something worse would happen if she said otherwise. Appellant asked E.B. if she wanted him to help her clean the women's bathroom; she declined his offer for help.

**{¶21}** E.B. testified that when she walked into the women's bathroom, she decided that she could not let the incident go. She walked out of the women's restroom, into the back of the restaurant, and called her mom to pick her up. She did not want to stay at Five Guys after the incident. E.B. told her friend and coworker, Andrew Majesky ("Majesky"), that appellant touched her.

**{¶22}** E.B. testified that appellant hit her buttocks with a tupperware lid on two prior occasions. She explained that the restroom incident was different than the two occasions when appellant hit her buttocks because "it was actually happening like more than just a hit."

**{¶23}** After reviewing the record, we find that the state's evidence, if believed, is sufficient to establish the element of sexual contact.

### 2. Recklessness

**{¶24}** R.C. 2901.22(_) provides the following definition for recklessness:

A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

**{¶25}** Appellant argues that he reasonably assumed that E.B. would welcome the sexual contact and not find it to be offensive. In support of his argument, appellant emphasizes that (1) he worked with E.B. on a number of occasions and that they "always engaged in sexual and inappropriate jokes"; (2) he engaged in sexual contact with E.B. on a prior occasion when he hit her buttocks; (3) when he previously hit E.B.'s buttocks, she did not file a complaint; and (4) when he asked E.B. if she was okay after the incident in the men's restroom, she said she was fine.

**{¶26}** E.B. testified that appellant would joke around with her during work. Specifically, she explained that appellant joked about a five or ten second rule and a two finger rule:

[appellant] had joked around about like it was like a five or ten second rule. About like let's go do something like inappropriate but like for like seconds. He would say how many second[s]. It was either five or ten. And [appellant is] like oh, well, this. And like I knew what it meant like joking around. Nothing had ever happened when [appellant] joked about it. And then [appellant] said like a two finger rule. (Tr. 262.)

**{¶27}** When asked what appellant meant by joking for five or ten seconds, E.B. testified that he meant going somewhere and doing something, but she did not know exactly what he intended. She explained that appellant began joking about the five or

ten seconds when he taught her how to make french fries. E.B. asserted that appellant's two finger joke referenced "a fingering thing" in a sexual context.

{¶28} E.B. stated that appellant's jokes and comments were random, but she did not consider them to be weird. She testified that she was never comfortable being around appellant's sexual jokes or comments; however, she never told him to stop saying the jokes and comments to her. She explained that appellant normally joked around with all the employees he was working with, but not in a sexual manner.

{¶29} E.B. stated that when appellant would joke with her, she would "kind of joke back." She explained that she would laugh at appellant's jokes, but confirmed that she never reciprocated by making those types of jokes or comments. She stated that she would laugh at appellant's jokes because she did not know what to do.

{¶30} E.B. testified that on two prior occasions, appellant hit her buttocks with a tupperware lid. The first instance occurred in the cooler; E.B. explained

> [appellant] was telling me he was going to show me where to put the food in the walk-in [cooler]. *He asked to touch my butt and I said no*. He hit my butt with the [tupperware] lid and I didn't say anything because I didn't want to feel stupid. I didn't think it was a big deal. There's nothing to show that he hit my butt. I didn't realize that it was that bad. (Tr. 335.)

(Emphasis added.)

{¶31} The second instance occurred while E.B. was doing dishes; E.B. explained, "[appellant] hit my butt with a [tupperware] lid when I was doing dishes. And I laugh at everything and I laugh — because I laugh at everything and in a terrible situation I laugh. I make the best out of everything."

**{¶32}** E.B. testified that she did not do anything when appellant hit her buttocks because it did not seem like he was serious and she did not feel like it was a big deal. She explained, "[t]here's no cameras to show that or anything. So why would I say something if you can't — if there's nothing to do about it." E.B. confirmed that she did not reciprocate when appellant hit her in the buttocks and that she never indicated to appellant that she wanted to be touched.

**{¶33}** E.B. testified about her reaction to the January 13, 2015 incident. When appellant hit her in the buttocks with a mop, she explained, "I kind of stood up and was like just shocked. Because then after [appellant] did that, he shut the door, like he locked the door and he shut off the lights and it kind of startled me. I got really scared." (Tr. 276.) She explained that she "just froze" and that she did not scream or try to fight appellant off.

**{¶34}** After reviewing the record, we find that the state's evidence, if believed, is sufficient to establish that appellant knew that the sexual contact was offensive to E.B. or acted reckless with regard to whether it was offensive. We cannot say that it was reasonable for appellant to believe that E.B. would welcome the sexual contact merely because she laughed at his inappropriate jokes and comments. Furthermore, although E.B. neither complained about nor reported the two occasions when appellant hit her buttocks, it was not reasonable for appellant to believe that E.B. would welcome the sexual contact that occurred in the men's restroom.

### 3. Corroboration

**{¶35}** R.C. 2907.06(B) provides that "[n]o person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence." "The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." *See State v. Economo*, 76 Ohio St.3d 56, 666 N.E.2d 225 (1996), syllabus. Furthermore, "[t]he corroboration requirement of R.C. 2907.06(B) is a threshold inquiry of legal sufficiency to be determined by the trial judge, not a question of proof, which is the province of the factfinder." *Id*. at 60, citing *State v. Robinson*, 83 Ohio St. 136, 143, 93 N.E. 623 (1910). In *Economo*, the Ohio Supreme Court found sufficient evidence of corroboration of a doctor's sexual imposition upon a patient where the evidence demonstrated the physician-patient relationship at the relevant time period, and third parties observed that the patient was scared, on the verge of tears, and did not want to be alone with the doctor. *Id*. at 60.

**{¶36}** In the instant matter, the following third parties testified regarding their observations of, or interactions with, E.B. following the incident: (1) E.B.'s mother, (2) Detective Ken Vagase of the North Olmsted Police Department, (3) Five Guys crew member Tristan Coffey ("Coffey"), (4) Five Guys employee Kyle Bowden ("Bowden"), (5) Five Guys supervisor Matthew Mahmet ("Mahmet"), and (6) Five Guys employee Majesky.

{¶37} E.B.'s mother testified that although E.B. usually worked until 11:00 p.m., E.B. texted her around 9:00 p.m. on the night of the incident and asked for a ride. E.B.'s mother stated that she called E.B. while she was on the way to Five Guys, and testified that "[E.B.] was hysterical. Like I didn't even know where she was. I said, Where are you? What happened? Are you okay? I didn't know what to think." E.B.'s mother stated that she also called the North Olmsted Police Department while she was driving and requested that they send an officer to Five Guys because her daughter was hysterical.

{¶38} E.B.'s mother testified that E.B. was still hysterical when she arrived at Five Guys, explaining, "[E.B.] was crying. Sobbing would be a good way to put it." E.B.'s mother stated that she drove E.B. to the police station where they both filled out police reports.

{¶39} Detective Vagase interviewed E.B. about the incident on February 18, 2015; during his interview, he reviewed the handwritten police report that E.B. authored on the night of the incident. Regarding E.B.'s demeanor during the interview, Detective Vagase testified, "[i]t was clear [E.B.] was uncomfortable discussing what we were going to talk about. As the interview went along, there were certain periods of time during that where she became visibly upset, would have to stop talking, crying, that kind of thing." He stated that E.B.'s account of the incident in her handwritten report was consistent with her statements during the interview.

{¶40} Coffey testified that E.B. was crying when she was clocking out; she was visibly upset when she walked out of a room in the back of Five Guys. Coffey did not

ask E.B. if she was okay because "she was too upset to talk to."

**{¶41}** Bowden was an employee at Five Guys but he was not working on the night of the incident. Bowden stated that he spoke with E.B. on the phone around 11:00 p.m. Bowden testified that E.B. quit her job at Five Guys on the night of the incident.

**{¶42}** Mahmet testified that he was working on the night of the incident; he explained that it was a slow night. Mahmet stated that appellant told E.B. to clean the bathrooms and said that he would show her how to do it the right way. Mahmet testified that he went outside for a smoke break, and when he returned five to ten minutes later, he observed E.B. "crying profusely" in the back of the restaurant. Mahmet asserted, "[m]y impression was that she lost a family member or a pet ran away or something along those lines." Mahmet explained that E.B. was "crying profusely. She did not seem happy."

**{¶43}** Majesky testified that he spoke with E.B. during his shift on January 13, 2015, and that E.B. appeared to be upset, sad, and mad. Majesky explained that E.B. "was crying and she was loud." Majesky stated that appellant was training E.B.

**{¶44}** Like *Economo*, we find that the record contains sufficient evidence of corroboration of appellant's sexual imposition upon E.B. The foregoing testimony demonstrates that E.B. was considerably upset, crying, uncomfortable with what had transpired, and no longer wanted to work at Five Guys. Accordingly, the trial court could properly find that the requirement of corroboration was established.

**{¶45}** For all of the foregoing reasons, we find that appellant's sexual imposition

convictions are supported by sufficient evidence.

## B. Manifest Weight

**{¶46}** In addition to his sufficiency challenge, appellant's first assignment of error encompasses manifest weight issues. Specifically, appellant suggests that E.B. made up the allegations against him.

**{¶47}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

**{¶48}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382,

2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶49} In the instant matter, appellant directs this court to his trial testimony. Appellant denied making inappropriate or sexual jokes to E.B.; he further denied hitting E.B.'s buttocks with a tupperware container. Appellant insisted that he did not joke around, either with E.B. or his other coworkers.

{¶50} Appellant testified about his shift on January 13, 2015. He stated that he offered to help E.B. clean the restrooms and the lobby. Appellant explained that he propped the door of the men's restroom open with a bucket; he was cleaning the wall and E.B. was cleaning the floor. He stated that he left the restroom after no more than one minute, and instructed E.B. to finish cleaning the restroom.

{¶51} Appellant testified that he did not touch E.B.'s breasts, buttocks, or any other part of her body. He further denied turning off the lights and forcing E.B. to remain in the restroom against her will.

{¶52} Appellant testified that on the day of the incident, he had a conversation with E.B. during which he told her she needed to improve herself for the better of the Five Guys crew. He suggests that E.B. was upset that she had been reprimanded and that she made up the allegations against him in an effort to save her job.

**{¶53}** E.B. testified that during her lunch break on the date of the incident, appellant told her that she and the other employees were joking around too much, and that the owner/manager of the Five Guys did not like the employees' behavior. E.B. explained that the joking around included "slacking a little bit" and employees talking with one another rather than focusing on their job. E.B. stated that she was frustrated and irritated after the conversation because she does her job and gets done what she needs to; she did not feel like she had done anything wrong, and no one had ever told her anything differently about her performance at work.

**{¶54}** E.B. was upset when appellant told her to conduct herself differently at work. She explained that after the conversation with appellant, she had a feeling she might get fired. She stated that she "wasn't very emotional"; she was "just frustrated" because she "never did her job wrong."

**{¶55}** After reviewing the record, we cannot say that this is "an exceptional case" in which the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's sexual imposition convictions were against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. As noted above, the defense's theory of the case was that E.B. was upset after appellant reprimanded her and that she made up the allegations against him in an effort to save her job. On the other hand, the state's theory of the case was that appellant inappropriately touched E.B. in the men's restroom, and acted recklessly in doing so. Appellant's convictions are not

against the manifest weight of the evidence simply because the jury chose to believe the state's version of the events rather than appellant's.

{¶56} The jury, as the trier of fact, was in the best position to weigh the credibility of the witnesses.   The jury was free to find — and clearly did find — E.B.'s testimony to be more credible than appellant's.

{¶57} For all of the foregoing reasons, appellant's first assignment of error is overruled.   Appellant's sexual imposition convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.

### C. Trial Court's Sentence

{¶58} In his second assignment of error, appellant argues that the trial court's sentence is inconsistent with law and that the trial court's November 30, 2015 sentencing journal entry is inconsistent with the sentence imposed in open court during the sentencing hearing.   The state concedes that the trial court's sentencing journal entry contains a clerical error regarding the penalty for violating community control sanctions.

{¶59} During the sentencing hearing, the parties stipulated that the two sexual imposition counts charged in Counts 3 and 4 merged for sentencing purposes; the state elected to sentence appellant on Count 3.   The trial court sentenced appellant to community control sanctions for a period of nine months, and informed appellant that a violation of the terms of his community control sanctions could result in *60 days in jail*.

{¶60} The trial court's November 30, 2015 sentencing journal entry reflected that appellant was sentenced to community control sanctions for a period of nine months;

however, the journal entry did not specify that the nine-month community control sanctions were imposed for Count 3, nor did the journal entry indicate that Counts 3 and 4 were merged for sentencing purposes. Furthermore, the journal entry provided, in relevant part, "violation of the terms and conditions [of community control] may result in more restrictive sanctions, or *a prison term of 6 month(s)* as approved by law." (Emphasis added.)

**{¶61}** Initially, on September 9, 2016, this court remanded the matter to the trial court, finding that the trial court's November 30, 2015 sentencing journal entry did not constitute a final appealable order because the entry neither imposed a sentence for both of appellant's sexual imposition counts nor reflected that the two counts merged for sentencing purposes. This court instructed the trial court to either impose a separate sentence for each sexual imposition count or indicate that the two counts were merged. The trial court issued a nunc pro tunc sentencing journal entry on October 14, 2016, which provided, in relevant part, "parties agree that Counts 3 and 4 merge and the state elects for [appellant] to be sentenced on Count 3."

**{¶62}** After reviewing the record, we find merit to appellant's second assignment of error. The trial court's November 30, 2015 sentencing journal entry does not reflect the potential 60-day prison term for a community control violation that the trial court imposed during the sentencing hearing. Furthermore, the potential six-month prison term for a community control violation provided in the sentencing entry exceeds the permissible statutory range under R.C. 2929.24. Appellant's sexual imposition

convictions are misdemeanors of the third degree. R.C. 2929.24(A)(3) provides that the jail term for third-degree misdemeanors shall not exceed 60 days.

{¶63} It is well established that a court speaks through its journal entries. *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 12. However, a trial court may correct clerical errors at any time in order to conform to the transcript of the proceedings. *State v. Lugo*, 8th Dist. Cuyahoga No. 103893, 2016-Ohio-2647, ¶ 3, citing *State v. Steinke*, 8th Dist. Cuyahoga No. 81785, 2003-Ohio-3527, ¶ 47; Crim.R. 36. Trial courts retain continuing jurisdiction to correct clerical errors in judgments with a nunc pro tunc entry to reflect what the court actually decided. *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 18-19.

{¶64} Accordingly, we sustain appellant's second assignment of error and remand the instant matter to the trial court for the limited purpose of issuing a nunc pro tunc journal entry that accurately reflects the sentence imposed at the sentencing hearing.

### III. Conclusion

{¶65} Appellant's sexual imposition convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The trial court's sentencing journal entry indicates that a community control violation may result in a six-month prison term, while the transcript shows that the trial court informed appellant that he faced 60 days in jail if he violated the terms of community control.

{¶66} Judgment affirmed. However, this case is remanded to the trial court for the limited purpose of issuing a nunc pro tunc journal entry that accurately reflects the

sentence imposed at the sentencing hearing.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for correction of the journal entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR