Mock, Presiding Judge.
{¶ 1} Defendant-appellant Damon Walker was indicted for two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4). Walker filed a motion to suppress the statement he made to police while held in the Hamilton County Justice Center, claiming that his statements were "involuntary because he did not have the capacity to waive his Miranda rights." After two separate evaluations from the Court Clinic Forensic Services and a hearing on the matter, the trial court denied the motion. Walker pleaded no contest to the charges, and the trial court found him guilty. He was sentenced to five years in prison and provided notice of his duty to register as a Tier III sex offender. In three assignments of error, Walker now appeals.
The Hearing on the Motion to Suppress
{¶ 2} During the hearing on the motion to suppress his statement, Cincinnati Police Detective Kimberly Kelley testified that she and Detective Iris Kelly had interviewed Walker on January 22, 2015. Walker had recently been assaulted by a person who accused him of molesting a relative. The detectives were already familiar with Walker from previous investigations in 2013 involving two different child victims. Kelley also testified that Walker had previously been treated for competency restoration in the juvenile court before he was adjudicated for gross sexual imposition.
{¶ 3} Walker's interview was conducted at the Hamilton County Justice Center while he was awaiting trial in an unrelated matter. Detective Iris Kelly reviewed the notification of rights form with Walker, knowing that Walker had a "limited intellect." She began by reading the rights form to Walker. When she asked what that meant to him, he responded that he didn't know. She said, "That means that you can talk to us without a lawyer. Okay? That means that if you want-if you want to stop talking to us, you can stop at any time. Okay? Do you understand that?" Walker said that he did. When she asked if he was sure, Walker confirmed that he understood.
{¶ 4} During the interview, Kelly used simple language to communicate with him, and he appeared to have no problem understanding the questions and providing logical responses. Walker was interviewed for less than two hours. During the course of the interview, Walker admitted taking the five-year-old nephew of his godmother into the bathroom of her apartment, removing his clothing, fondling his penis, and forcing him to fondle Walker's penis.
*328 {¶ 5} The trial court also heard testimony from Dr. Carla Dreyer and Dr. Gail Hellmann of the Court Clinic Forensic Services. Both submitted reports opining that Walker was not competent to waive his Miranda rights. Dreyer had had previous contact with Walker during the course of Walker's juvenile proceedings. Four weeks before the detectives interviewed Walker at the Justice Center, Dreyer had concluded that Walker had been competent to stand trial in another matter.
{¶ 6} Prior to conducting the interview with Walker in preparation for the hearing in this case, Dreyer reviewed the "Receipt Confirmation of Forensic Participant's Rights Policy and Privacy Practices of Court Clinic and Informed Participation Statement" with Walker. Even though Walker had had a guardian ad litem appointed who was not present at the time, Dreyer concluded that Walker appeared to adequately understand the information such that Walker was capable of waiving his privacy rights. After being convinced that Walker understood his rights and the consequences of cooperating with the interview, Dreyer commenced her evaluation and administered the "Miranda Rights Comprehension Instruments" test.
{¶ 7} Dreyer interviewed Walker for about 30 minutes at the Justice Center. Dreyer indicated that Walker "has consistently minimized his history of contacts with the court system and the sexually-inappropriate behaviors." He had also been diagnosed with disruptive-behavior disorder, attention-deficit/hyperactivity disorder, a psychotic disorder not otherwise specified, impulse-control disorder, and oppositional-defiant disorder, and had been sexually abused as a child. Nonetheless, Walker had been denied assistance from the Hamilton County Developmental Disabilities Services because of Walker's "previous formal measurements of his adaptive functioning." After the evaluation was concluded, Dr. Dreyer concluded that Walker had not been competent to waive his Miranda rights at the time he was questioned, rendering his waiver unknowing and involuntary.
{¶ 8} Dr. Hellmann evaluated Walker five months after Dr. Dreyer. Hellmann interviewed Walker for less than an hour. She also reviewed the interview between Walker and the detectives. Hellmann concluded that Walker "had a tendency to acquiesce or provide statements [which] he perceived to be socially acceptable or desired by the questioner." Hellmann, like Dreyer, concluded that Walker had not been competent to waive his Miranda rights.
{¶ 9} In denying the motion to suppress, the trial court chose to reject the conclusions of Drs. Dreyer and Hellmann. The trial court said that
With our case at hand, we have a situation where the defendant, while being interviewed was cunning enough to minimize his criminal record and has consistently done that. He was not medicated. He was only using sleep medication. He [has], in fact, been determined-or deemed uneligible [sic] for DDS services.
He talks about-to the doctors about the cops coming to see him. He remembers that and why they came to see him about touching his nephew. He remembers that the police told him he did not have to sign the Miranda waiver and that he could have an attorney with him. He indicates that he forgot to tell the police that he wanted a lawyer.
Despite all of that, and the fact that he has repeatedly been found competent after restoration to stand trial, the doctors had deemed him incompetent on a date that was about five months prior to their examination for Miranda .
*329 He is able to understand all of the courtroom activities[,] all of the involvement of the parties, what his job is in the courtroom, what his lawyer's job is, the prosecutor, the judge, the various pleas that he could enter.
Throughout his interview, which was not lengthy. [sic] There is was [sic] one interview. The police officer spoke with him very softly, handled him very generally [sic]. He, throughout the interview, corrected the officer or denied things that they suggested. He was not simply endorsing what the police officers had said.
He denied touching his nephew's behind. He explained who Day-Day was. He knew the location of the apartment. He explained his conviction with a victim named [M.S.]. He denied having pulled the child into the bathroom.
He has prior criminal experience which is extensive. And the Miranda waiver is only a factor in the totality of the circumstances of him understanding everything that was going on, the signature of the waiver.
Again, this was not a long interview. It was not intense. He was not deprived of anything. He was not mistreated. No inducements were made.
He knew he was talking to the police. He knew he did not have to talk. He knew he was in the Justice Center. He had been through the system multiple times.
There is nothing, frankly, that indicates that he did not understand the ramifications of signing the Miranda waiver. So I respectfully disagree with the doctors. And the motion to suppress is denied. Overruled.
The Motion to Suppress Was Properly Denied
{¶ 10} In his first assignment of error, Walker claims that the trial court improperly denied his motion to suppress his statement. Appellate review of a motion to suppress presents a mixed question of law and fact. State v. Burnside , 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. Id.
{¶ 11} In Miranda , the United States Supreme Court determined that, due to the coercion inherent in custodial police interrogation, certain procedural safeguards were necessary as prophylactic measures "to secure the privilege against self-incrimination." Miranda v. Arizona , 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. After he is advised of his rights, "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." Id.
{¶ 12} In this case, Walker argued below that his statement had been involuntary because he did not have the capacity to waive his Miranda rights. The basis for that argument was that Walker lacked the mental capacity, including the intellect, to knowingly, voluntarily, and intelligently waive his rights-an argument supported by the expert opinions of Drs. Dreyer and Hellmann.
{¶ 13} And so, there are two questions for this court to answer. First, we must *330 determine if it was permissible for the trial court to reject the conclusions of the two experts who testified in this case. Second, if such a rejection was permissible, we must decide if there was competent, credible evidence to support the conclusion that Walker's intellect did not prevent him from knowingly, intelligently, and voluntarily waiving his Miranda rights.
The Expert Testimony
{¶ 14} While a trial court cannot "arbitrarily" ignore an expert opinion, it may reach a contrary conclusion if there are "some reasons * * * objectively present" in the record to do so. State v. Brown , 5 Ohio St.3d 133, 135, 449 N.E.2d 449 (1983). Thus, an expert's opinion is not conclusive, even if uncontradicted by another expert. Id. ; see State v. White , 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 71 (holding that the trial court is not required to accept an expert's opinion when there is some objectively present reason for ignoring it).
{¶ 15} In this case, the trial court had reasons objectively present upon which it could rely to reject the expert opinions below. Just weeks before he was evaluated by Dr. Dreyer as to his "Competence to Waive Miranda Rights," Dreyer had filed a report in another matter that Walker was competent to stand trial. In other words, just 36 days before, Dr. Dreyer had found that Walker understood the nature and objective of the proceedings against him and could participate in his own defense. See Dusky v. United States , 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). While the experts indicated that competence to stand trial and competence to understand the Miranda rights are not the same thing, Walker's ability to understand the trial process and assist in his defense is some evidence that he understood what was happening to him, the role of law enforcement, and that he could understand information about that process that was explained to him.
{¶ 16} Particularly noteworthy was the fact that Dreyer, prior to interviewing Walker, had engaged him in a discussion in order to determine whether he could knowingly agree to the "Confirmation of Forensic Participant's Rights Policy and Privacy Practices of Court Clinic and Informed Participation Statement." Dreyer concluded that Walker, in order to participate in the evaluation, was competent enough to waive his fundamental right to privacy. And, even though Walker had a guardian to protect his interests, Dreyer went through the interview without either having the guardian review the form or having Walker sign it. Dreyer had concluded that Walker was able to participate in that process, saying that she was comfortable interviewing Walker-even without his guardian present-because of his numerous prior contacts with the Court Clinic.
{¶ 17} Similarly, the trial court could reasonably look at this determination, very similar to the determination of whether the Miranda waiver was knowing, intelligent, and voluntary, when reaching its conclusion that Walker had validly waived his rights. The trial court also noted that Walker had had extensive experience with the criminal-justice system prior to the interview. The trial court mentioned that Walker was insightful enough to "minimize his criminal record and has consistently done so." And while Dr. Dreyer had indicated that she disagreed with its conclusion, the fact remained that the Hamilton County Developmental Disabilities Services agency had found Walker ineligible for their services due to "previous formal measurements of his adaptive functioning."
{¶ 18} On this record, we conclude that the trial court could reject the conclusions of the expert witnesses and make its own *331 determination as to whether Walker's intellect precluded him from knowingly, intelligently, and voluntarily waiving his Miranda rights.
The Decision Was Supported by Competent, Credible Evidence
{¶ 19} We must now determine, absent the conclusions of the expert witnesses, whether there was competent, credible evidence upon which the trial court could rely when determining that Walker's waiver of his Miranda rights was knowing, voluntary, and intelligent. "[A] court may infer from the totality of the circumstances that a defendant voluntarily, knowingly, and intelligently waived his rights." State v. Lather , 110 Ohio St.3d 270, 2006-Ohio-4477, 853 N.E.2d 279, ¶ 9, citing State v. Clark , 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). The totality of the circumstances includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Dixon , 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶ 25, quoting State v. Eley , 77 Ohio St.3d 174, 178, 672 N.E.2d 640 (1996). By this definition of "totality," a court is to look to all of the evidence to determine a suspect's understanding, which can be implied by his conduct and the situation. Lather at ¶ 9.
{¶ 20} An individual's low intellect does not necessarily render him or her incapable of waiving Miranda rights. State v. Jenkins , 15 Ohio St.3d 164, 233, 473 N.E.2d 264 (1984). Rather, a person's low intellect is but one of many factors under the totality of circumstances that a court must consider in assessing the voluntariness of a Miranda waiver or confession. State v. Frazier , 115 Ohio St.3d 139, 154, 873 N.E.2d 1263 (2007).
{¶ 21} As the trial court noted, the detectives spoke plainly with Walker when explaining his rights. Both detectives had had previous contact with Walker while investigating two separate offenses involving other victims. Detective Kelly had previously explained Walker's Miranda rights to him. After the rights form was read to Walker, he was asked if he knew what it meant, and he said that he didn't know. Detective Kelly then summarized the rights for Walker, stating that they meant that "you can talk to us without a lawyer, or you can talk to us with a lawyer. Okay? That means that if you want to stop talking to us, you can stop at any time." Walker was then asked if he understood, and he said that he did. Kelly pressed him further, asking, "Are you sure?" Walker responded, "Yes, ma'am." After repeatedly telling the detectives that he understood his rights, he then agreed to speak with them.
{¶ 22} The interview itself was not long, lasting less than two hours. He was not denied anything during the course of the interview, and he was not mistreated. While he was in the Hamilton County Justice Center at the time of questioning, he was being held there on a separate matter. He was 20 years old at the time, and had had numerous contacts with the justice system before that.
{¶ 23} It is worth noting that the trial court was able to not only read the cold transcript of the interview, but was also able to listen to the audio recording. The audio recording gives a different sense of the exchange than can be had from reading the words on the page. It is in situations like this when this court should give deference to the trial court's interpretation of such evidence. The trial court listened to the recording of Kelly reading the rights to Walker, Walker's response claiming he did not understand, and Kelly's explanation *332 of the rights. On this record, the trial court's determination was supported by competent, credible evidence.
{¶ 24} The trial court concluded that there was "nothing, frankly, that indicates that he did not understand the ramifications of signing the Miranda waiver." In the context of this case, and having determined that the trial court permissibly rejected the opinions of the expert witnesses, this statement was accurate. While the experts reached a different conclusion, the trial court was not required to accept their opinions as long as other evidence in the record supported departing from their conclusions. Compare State v. White , 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 70 (the trial court failed to set forth any rational basis grounded in the evidence for rejecting the uncontradicted testimony of two qualified expert witnesses in the field of psychology). In this case, the trial court gave an extensive recitation of the evidence in the record to explain why it did not agree with the expert witnesses. Because the trial court's finding was supported by some competent, credible evidence, the trial court did not err when it denied his motion to suppress. We overrule Walker's first assignment of error.
Content of Miranda Warning and Subsequent Explanation
{¶ 25} While the dissent has raised the issue of Detective Kelly's inadequate explanation of the Miranda rights during Walker's interview, Walker neither raised that issue in the trial court, nor argued that issue to this court on appeal. During the course of the proceedings on the motion to suppress, Walker's counsel clearly limited the scope of his challenge to his "capacity to waive his Miranda rights," not their adequacy. After having presented the expert testimony, counsel argued only that the "State has the burden * * * of proving, by a preponderance of the evidence, that Mr. Walker's statement was voluntary. You have two experts who have both agreed independently that [it] was not." Counsel concluded by stating that "we ask that you accept and follow the opinions offered to you by the scientific experts in this regard."
{¶ 26} "It is well-settled law that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived." Columbus v. Ridley , 2015-Ohio-4968, 50 N.E.3d 934, ¶ 28 (10th Dist.), quoting State v. Barrett , 10th Dist. Franklin No. 11AP-375, 2011-Ohio-4986, 2011 WL 4489169, ¶ 13 ; see State v. Comen , 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990). This "well-settled law" applies to arguments not asserted either in a written motion to suppress or at the suppression hearing. Id. , citing State v. Johnson , 10th Dist. Franklin No. 13AP-637, 2014-Ohio-671, 2014 WL 746657, ¶ 14 ; State v. Vaughn , 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, 2015 WL 1005336, ¶ 9 ; State v. Perkins , 9th Dist. Summit No. 21322, 2003-Ohio-3156, 2003 WL 21396699, ¶ 13 ; State v. Molk , 11th Dist. Lake No. 2001-L-146, 2002-Ohio-6926, 2002 WL 31813021, ¶ 11.
{¶ 27} Walker would not have been able to raise on appeal the issue of whether the warnings he received from Detective Kelly were adequate. And the appellate record demonstrates that he has not. Throughout his brief to this court, Walker continued to rely solely on Walker's mental capacity to understand his rights, as demonstrated by the expert testimony. Even in his third assignment of error, wherein Walker argues the ineffectiveness of trial counsel, he fails to assert that trial counsel should have raised the issue of the inadequacy of the explanation of the Miranda rights.
{¶ 28} In a recent case from the Eleventh Appellate District, the court addressed a similar issue.
*333 State v. Mock , 11th Dist. Lake No. 2012-L-066, 2013-Ohio-874, 2013 WL 950812. In that case, the defendant had filed a motion to suppress based on his unlawful continued detention during a traffic stop. Id. at ¶ 4. On appeal, he argued for the first time that the search of a bag in the vehicle was improper. Id. at ¶ 7. The court began by noting that the failure to make an argument before the trial court in support of a motion to suppress "constitutes waiver of the defenses or objections." Id. at ¶ 8, citing Crim.R. 12(H). The court reasoned that
by failing to advance these arguments in his suppression motion before the trial court, the state did not have notice of the issues and an opportunity to prepare its case. The trial court did not make any findings of fact on these points because the matters were not raised and there was no evidence placed before it at the suppression hearing. [Consequently], this appellate court is unable to conduct its ordinary standard of review as there are no factual findings upon which to defer and no application of law to apply.
(Citations omitted.) Id. at ¶ 9. The court then went on to reject the proposition that such an argument could be considered under a plain-error analysis.
Notice of plain error is to be "taken with utmost caution and only to prevent a manifest miscarriage of justice[.]" However, we question the propriety of a plain error analysis in the context of a defendant's failure to make constitutional arguments in a suppression motion. Under appellant's line of reasoning, the trial court, to avoid the alleged error in this case, would have been required to raise new suppression issues on behalf of appellant, request the parties to present evidence on those matters, and then evaluate the issues.
(Emphasis sic.) (Citation omitted.) Id. at ¶ 10.
{¶ 29} We agree with our colleagues in the Eleventh District that addressing an argument not raised below in support of a motion to suppress, even under plain error, would be inappropriate. But even if we were to consider it in the context of plain error, Walker would not succeed. For an error to constitute "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. State v. Barnes , 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).
{¶ 30} In this case, we would not be able to say that any error was an obvious defect in the trial proceedings. Generally, when a suspect receives an incomplete reading of the Miranda warnings, courts have held that subsequent statements are not admissible. See California v. Prysock , 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). But this is not a case where the only information given to the suspect was an incomplete reading of the rights. The incomplete explanation had been preceded by a complete reading of the rights. This court has not found a case with a fact pattern similar to the case at bar, though courts have held that an incomplete rewarning is not deficient when it has been preceded by a complete warning. See, e.g. , State v. Treesh , 90 Ohio St.3d 460, 472, 739 N.E.2d 749 (2001) (holding that partial rewarning was sufficient in light of the arresting officer's earlier warning that had occurred just two hours before). Thus, even if this court were inclined to engage in such an analysis, without a bright-line rule that would have clearly demonstrated an obvious defect, we could not have concluded that the failure to sua sponte grant *334 a motion to suppress based on grounds that had not been argued rose to plain error.
{¶ 31} We overrule Walker's first assignment of error.
Tier III Offender Classification
{¶ 32} In his second assignment of error, Walker claims that he was improperly classified as a Tier III sex offender. The state concedes that Walker should have been classified as a Tier II sex offender. We agree.
{¶ 33} As a juvenile, Walker had been classified as a Tier I offender for a previous incident of gross sexual imposition. However, at the hearing below, the trial court concluded that the juvenile court had not had the authority to classify Walker as a Tier I offender. As a result, the trial court determined that Walker had actually been a Tier II offender. Thus, the trial court classified Walker as a Tier III offender in this case.
{¶ 34} This court has previously held that the juvenile court has discretion to classify juvenile offenders, like Walker, who commit gross sexual imposition as Tier I offenders. See In re A.C. , 182 Ohio App.3d 237, 2009-Ohio-2567, 912 N.E.2d 182, ¶ 13. Therefore, the trial court should have classified Walker as a Tier II offender in this case. See R.C. 2950.01(F)(1)(j). We sustain Walker's second assignment of error.
Assistance of Counsel
{¶ 35} In his third assignment of error, Walker claims that counsel was ineffective to the extent that counsel failed to properly preserve the record below to allow for appellate counsel to fully argue the first two assignments of error. He first argues that trial counsel was deficient for failing to argue that the waiver was not knowing or intelligent, having raised only the issue of voluntariness. But, as the state concedes, it did not believe that the motion to suppress "was in any way insufficient to preserve the issues raised in his first assignment of error. The trial court clearly considered whether Walker's waiver of his Miranda rights was done knowingly, intelligently, and voluntarily." We agree with this analysis, and have considered whether Walker's mental capacity rendered his waiver unknowing, unintelligent, or involuntary within the context of his first assignment of error.
{¶ 36} We also conclude that the record below was sufficient for counsel to raise the issue of his improper classification, an error which the state concedes. Thus we have considered this argument within the context of the second assignment of error.
{¶ 37} Since we have addressed the substance of the arguments in both assignments of error, trial counsel was not ineffective for failing to preserve them for our review. We overrule Walker's third assignment of error.
Conclusion
{¶ 38} The portion of the trial court's judgment classifying Walker as a Tier III sex offender is reversed, and this cause is remanded to the trial court with instructions to classify Walker as a Tier II sex offender, after providing him with the appropriate notifications relevant to that classification. The trial court's judgment is affirmed in all other aspects.
Judgment affirmed in part, reversed in part, and cause remanded.
Cunningham, J., concurs.
Zayas, J., dissents.