[Cite as *Mohammadpour v. Haghighi*, 2023-Ohio-4211.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ALI MOHAMMADPOUR,                    :

    Plaintiff-Appellee,              :              No. 112427

    v.                               :

DAVOOD HAGHIGHI, ET AL.,             :

    Defendants-Appellants.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 22, 2023

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-21-955516

---

### *Appearances:*

David W. Hildebrandt, *for appellee.*

Brouse McDowell LPA and Wade T. Doerr, *for appellants.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Davood Haghighi and Auto Site, Inc. (hereinafter collectively referred to as "Appellants") appeal the verdicts in favor of appellee Ali Mohammadpour for $24,243.75 and against Appellants on their counterclaims. Because the jury's

verdicts were not against the manifest weight of the evidence, the judgment is affirmed.

PROCEDURAL HISTORY AND RELEVANT FACTS

*Trial and Verdicts on the Complaint and Counterclaims*

{¶ 2} On November 8, 2021, Mohammadpour filed a complaint against Appellants for unpaid accounting services he provided. The complaint alleged claims for breach of contract, nonpayment of account, and unjust enrichment. On February 4, 2022, Appellants filed an answer to the complaint and brought counterclaims against Mohammadpour for breach of contract, fraudulent billing, and professional negligence/malpractice seeking an award of compensation as well as attorney fees and punitive damages.

{¶ 3} Trial commenced on January 23, 2023, and on January 27, 2023, the jury found that the parties entered into an oral contract for accounting services. The jury unanimously found in favor of Mohammadpour on his claim of nonpayment of account against Auto Site, Inc. only and awarded Mohammadpour $24,243.75. The jury further unanimously found against Appellants on their counterclaims.

*Mohammadpour's Testimony*

{¶ 4} In May 2019, Mohammadpour, a certified public accountant with his own firm, was hired by Haghighi to prepare tax returns for Auto Site, Inc., Haghighi's "buy here pay here" used car business, and amend personal tax returns for Haghighi. At the time the contract was entered into, Haghighi had been

convicted in federal court of two counts of underreporting his income and one count of conspiracy to commit money laundering and was sentenced to 30-months in prison. As a condition of his sentencing, Haghighi was ordered to file tax returns within 6 months of his sentencing.

{¶ 5} When Haghighi retained Mohammadpour, he paid him a $5,000 retainer. Mohammadpour testified that he discussed his fees with Haghighi but did not offer an estimate of the total cost of the work. He further testified that tax returns had not been prepared for Auto Site, Inc. since 2008. Additionally, the IRS had assessed Haghighi approximately $680,000 in income taxes for the years 2008 to 2011 for underreporting of income. Mohammadpour said that after he was hired, he performed work on Haghighi's accounts and billed him monthly. Haghighi paid the monthly invoices but did not pay the December 2019 invoice.

{¶ 6} During the preparation of the tax returns, Mohammadpour sold his accounting practice to another accounting firm, the Sable Group. He informed all his clients of the sale, including Haghighi, and that any unpaid invoices issued prior to January 1, 2020, would be payable to him, but going forward all invoices would be payable to the Sable Group.

{¶ 7} Mohammadpour testified that the work performed was extensive because there were no traditional bookkeeping records kept for Auto Site, Inc. Auto Site, Inc. maintained records in a "text file" diary that was organized by customer. The text file covered retail transactions between 2008-2019 and consisted of 3,980

pages. Mohammadpour explained that the eleven years of records had to be examined line by line and he had to perform extensive "detective" work to obtain bank statements, records from car auctions, and other information in order to create bookkeeping records that would enable him to prepare financial statements for the business from which he could then prepare tax returns.

{¶ 8} Mohammadpour testified as to the hours worked by him and his staff, the invoices produced, and the amount of money received for that work. He testified that in December 2019, he billed Haghighi $24,243.75 and that the invoice was never paid.

{¶ 9} As to the completion of the tax returns, Mohammadpour stated that he was aware of the initial court filing deadline and that he worked with Haghighi's criminal defense attorneys to obtain an extension. In November 2019, in order to obtain the first extension, Mohammadpour prepared a letter stating that he had originally estimated the work would take a year to complete, that 1,800 hours of work had been performed thus far, and that more work would be required. Subsequently, two more extensions to file the returns were obtained that would allow for the returns to be filed in April 2020.

{¶ 10} As to the work performed, Mohammadpour acknowledged that he had billed Haghighi 1,300 hours through the time of the first extension, less than the time he put in his letter seeking the extension of time. Mohammadpour explained that he spent a lot of time with his client and his employees that he did

not bill. Mohammadpour testified that the Auto Site Inc. and Haghighi personal tax returns for the years 2012 – 2016 were completed in February 2020. The 2017 and 2018 tax returns were completed and filed before the April 2020 deadline. But because of the time pressure to complete the work, Mohammadpour stated the returns for the years 2017 and 2018 were provided with a caveat — "as is" — because the information he obtained might not have been complete.

*Haghighi's Testimony*

{¶ 11} Haghighi testified that he has a "buy here pay here" used car business, Auto Site, Inc. that caters to customers that cannot obtain financing for a car through other companies. He stated that the business sells approximately 350 cars per year. He kept information on the sales by customer. In 2013, federal authorities searched his home and business and took his business records as evidence. In 2017, Haghighi was charged in federal court with filing false tax returns in 2010 and 2011 and conspiracy to commit money laundering, charges to which he eventually pled guilty. In 2019, Haghighi entered guilty pleas and was sentenced to 30 months in prison, ordered to pay restitution, and ordered to file federal tax returns that had not been filed for his business within 6 months of his sentencing.

{¶ 12} Haghighi testified he met and hired Mohammadpour in May 2019. He provided Mohammadpour with relevant documents. He stated that he paid all of Mohammadpour's invoices, except the December 2019 invoice. Haghighi went to prison on September 30, 2019, and was concerned that the returns had not yet been

prepared because he would not be able to receive any consideration for early release until the returns were filed. Haghighi said the returns were eventually filed by April 2020. However, he obtained early release from prison because of the pandemic, not because the tax returns had been filed. Haghighi testified that after he was released from prison, he worked for another car dealer. He also testified that the tax returns prepared by Mohammadpour had to be amended by his current accountant.

{¶ 13} On cross-examination Haghighi stated he pled guilty to filing false tax returns because he did not include income from Auto Site, Inc. on his tax returns. He also admitted to pleading guilty to conspiracy to launder money because "there were a few customers that had happened to be drug dealers." He admitted that he was assessed back taxes in the amount of $800,000 for the years 2008 through 2011 and that for the years 2008 through 2011, his personal tax returns were prepared by Costanzo & Company, an accounting firm.

*Expert Testimony*

{¶ 14} Both Mohammadpour and Haghighi presented expert testimony as to the work performed and the reasonableness of the billing. Mohsen Riazi testified on Mohammadpour's behalf. Riazi testified that he has been licensed as a certified public accountant for 11 years and practiced accounting for 25 years. He testified that he reviewed the material used by Mohammadpour to produce the tax returns for Auto Site, Inc. and Haghighi as well as the invoices produced. He stated that in his professional opinion, the invoices were reasonable.

{¶ 15} Sanford Trado testified that he has been a certified public account for 37 years and was retained by Haghighi as an expert. He testified he works with Haghighi's accountants and currently earns $8,000 per month. He offered an opinion that Mohammadpour deviated from professional standards. Trado stated that based upon his review of the work Mohammadpour performed, Mohammadpour's work was excessive. Trado opined that it should have only taken 60 hours of bookkeeping work and then each return would have taken an hour and a half to prepare. As such, Trado opined that the total work necessary to prepare the tax returns would be worth $24,000. He also opined that because Mohammadpour did not take advantage of certain tax laws he committed professional negligence or malpractice.

LAW AND ARGUMENT

*Assignments of Error*

{¶ 16} Appellants present three assignments of error, which read:

1. The jury's award of damages on account is contrary to contract law and is against the manifest weight of the evidence; Mohammadpour admitted that he could not establish an account from zero.

2. The jury's failure to award appellant's damages for Mohammadpour's accounting malpractice is against the manifest weight of the evidence. Mohammadpour did not have expert testimony in support of his defense of the counterclaim for accounting malpractice and he admitted that his tax returns as prepared were defective.

3. Appellants are entitled to a setoff or recoupment of their actual losses against Mohammadpour's recovery on account.

*The jury award in this case was not contrary to contract law and was not against the manifest weight of the evidence*

{¶ 17} Within the first assignment of error, Appellants argue that the jury verdict finding in favor of Mohammadpour on the nonpayment of account claim was contrary to the manifest weight of the evidence because Mohammadpour breached material terms of the contract and the jury verdict is against the manifest weight of the evidence.

{¶ 18} In this case, the jury found that there was a contract for Mohammadpour to perform accounting services and that Mohammadpour was due damages for his claim for nonpayment of an account. Further, the jury found against Appellant's on their counterclaims. "An account is merely a pleading device used to consolidate several different claims one party has against another; an action on an account is appropriate where the parties have conducted a series of transactions, for which a balance remains to be paid." *AMF, Inc. v. Mravec*, 2 Ohio App.3d 29, 31, 440 N.E.2d 600 (8th Dist.1981), citing *Dykeman v. Johnson*, 83 Ohio St. 126, 93 N.E. 626 (1910).

{¶ 19} Appellants argue Mohammadpour failed to prove the elements of an account because the records of the account were not complete and Mohammadpour only presented the unpaid December 2019 invoice. However, the account may be established through oral testimony. *Id.* Appellants also argue that Mohammadpour

did not properly account for all his work and that the billing and payments records were incomplete. In this case, the jury received exhibits of the account and both Haghighi and Mohammadpour testified that all payments were made through November 2019. As such, we do not find merit to Appellants' argument that there was no evidence establishing an account and nonpayment thereof.

{¶ 20} Appellants also argue within the first assignment of error that the jury's verdicts were in error because the facts adduced at trial establish their counterclaim that Mohammadpour breached the terms of the contract. We will not reverse a judgment as being against the manifest weight of the evidence when the "verdict is supported by some credible, competent evidence that goes to all the essential elements of the case." *Abrams v. Siegel*, 166 Ohio App.3d 230, 2006-Ohio-1728, 850 N.E.2d 99, ¶ 46 (8th Dist.), citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). The standard of review of a manifest-weight challenge applicable to criminal cases is applied to civil cases, and "an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *John D. Smith Co., L.P.A. v. Lipsky*, 2d Dist. Greene No. 2019-CA-65, 2020-Ohio-3985, ¶ 33, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 21} In order to substantiate a claim that a contract has been breached, a party must establish "(1) a binding contract or agreement was formed; '[(2)] the nonbreaching party performed its contractual obligations; [(3)] the other party failed to fulfill its contractual obligations without legal excuse; and [(4)] the nonbreaching party suffered damages as a result of the breach.'" *Carbone v. Nueva Constr. Group, L.L.C.*, 2017-Ohio-382, 83 N.E.3d 375, ¶ 14 (8th Dist.), quoting, *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996), citing *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995).

{¶ 22} By alleging breach of contract in their counterclaim, Appellants admit that a contract existed in this case. They argue evidence at trial conclusively established Mohammadpour breached that contract because he did not prepare the tax returns on time, did not prepare returns that would reduce Haghighi's tax liability, and performed forensic accounting that was not necessary. They further argue that Mohammadpour's actions caused Haghighi damages in the form of an excessive tax liability and unnecessary criminal attorney fees.

{¶ 23} As to Appellants' arguments that Mohammadpour breached the contract by performing excessive work and did not reduce Haghighi's tax liability, Mohammadpour testified as to what he was hired to do and the type and extent of the work to be performed, and he further explained the steps he took to perform the work. Additionally, Riazi testified as to the reasonableness of the work performed.

As such, there was competent, credible evidence that supported the jury verdicts and our review of the record does not compel us to conclude that the jury lost its way or that the verdicts created a manifest miscarriage of justice. *Smith, supra.*

{¶ 24} As to the timing of the work, we note that the filing deadline set by the sentencing court was extended and the work was completed within the extension. Although Haghighi testified that he was worried and concerned about the completion of the work in a timely manner, he and his attorneys requested that the deadline be extended. Further, Haghighi did not testify at trial as to any specific damages he suffered because the filing deadline was extended. In briefing to this court, Appellants allege the record contains evidence of a $10,000 payment to Haghighi's criminal attorneys in February 2020. However, there is no testimony regarding the specific services for which this payment was made. As such, even if the jury had found Mohammadpour breached the contract there was no evidence of damages upon which the jury could award damages.

{¶ 25} The first assignment of error is overruled.

*The jury verdict finding in favor of Mohammadpour on the counterclaim for professional malpractice is not against the manifest weight of the evidence*

{¶ 26} Appellants argue under the second assignment of error that the jury lost its way in finding in favor of Mohammadpour on their counterclaim of professional negligence/accounting malpractice because testimony by their expert was unrebutted by other expert testimony. Appellants cite to *Beachwood v. Pearl,*

2018-Ohio 1635, 111 N.E.3d 620, ¶ 42 (8th Dist.), for the proposition that the trial court "'may not disregard credible and uncontradicted expert testimony in favor of either the perceptions of lay witnesses or of the court's own expectations.'" *Id.*, quoting *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905,

{¶ 27} However, in *Beachwood v. Pearl*, we noted that where there are conflicts in testimony, "'the trier of fact may reject an expert's opinion based on the contradictory opinion testimony of another expert or the expert's own concessions during cross-examination that question the credibility of his opinion.'" *Id.*, quoting *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2016-Ohio-7461, 64 N.E.3d 1018, ¶ 26 (9th Dist.). Moreover, we found that the trier of fact may reach a contrary conclusion to expert testimony where there are reasons present in the record to do so. *Id.*, citing *State v. Walker*, 2017-Ohio-9255, 103 N.E.3d 325, ¶ 14 (1st Dist.). As such, an expert's testimony need not be conclusive even when the testimony is not contradicted by another expert. Id.

{¶ 28} Mohammadpour argues that the jury could disregard Appellants' expert's testimony because there was evidence Trado was not credible because he had never before testified as an expert and because he earned $8,000 per month performing work with Haghighi's current accountants. Further, Mohammadpour cites to Trado's cross-examination where he was unaware of certain tax form requirements. Additionally, as to Trado's opinion that the work performed was

unnecessary and excessive, both Mohammadpour and Riazi testified as to the necessity of the work and the appropriateness of the billing.

{¶ 29} Our review of the record and testimony does not lead to a conclusion that there was no evidence presented to the jury that contradicted Trado's expert testimony. Rather, testimony from both Mohammadpour and Riazi contradicted Trado's opinions. Therefore, we cannot say that the jury's verdicts on Appellant's counterclaims were against the manifest weight of the evidence.

{¶ 30} The second assignment of error is overruled.

*Appellants are not entitled to a setoff or recoupment of losses against the jury's award of damages*

{¶ 31} Within the third assignment of error, Appellants argue that they were entitled to a setoff or recoupment of costs "[s]ince the jury lost its way in failing to award money to Appellants on their unrebutted counterclaim for accounting malpractice." In *Contract Sweepers Co. v. Glick Furniture Co.*, 10th Dist. Franklin No. 80AP-715, 1981 Ohio App. LEXIS 10688, 5 (June 25, 1981), the court explained the concepts of setoff and recoupment in Ohio law:

> A concise history of the law of setoff is found at 2 Ohio Jurisprudence 3d 4, Interim Topics, Counterclaim, Section 2. Setoff was a statutory device instituted to supplement the common law doctrine of recoupment. It was not a defense to liability but merely a means by which the liability of one party to another was reduced by the amount of a separate liability owed to the former by the latter. The result was that only the net liability was paid. *Id.*, Section 3.

{¶ 32} The ability to claim a setoff or recoupment must be pled as a counterclaim. *Id.* Accordingly, entitlement to recoupment or setoff is predicated upon raising the issues in a counterclaim.

{¶ 33} Appellants asserted a counterclaim for professional negligence/accounting malpractice. Had the jury found in their favor, it could have reduced the award for nonpayment on account as a recoupment or setoff. However, the jury found against Appellants on this counterclaim and in resolving the second assignment of error, we found the jury's verdict to not be against the manifest weight of the evidence. Accordingly, with no finding of professional negligence/accounting malpractice, there cannot be a separate liability owed Appellants that could form the basis of a setoff or recoupment.

{¶ 34} The third assignment of error is overruled.

CONCLUSION

{¶ 35} The jury verdicts awarding Mohammadpour damages on his nonpayment of account claim and against Appellants' counterclaims were supported by competent, credible evidence. Our review of the record does not compel us to conclude that the jury lost its way or that the verdicts created a manifest miscarriage of justice. Additionally, because the jury found against Appellants' counterclaim that Mohammadpour committed professional malpractice, there was no basis upon which Auto Site, Inc. was entitled to a setoff against the award of damages.

**{¶ 36}** Judgment affirmed.

It is ordered that appellee recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure

_____
MICHELLE J. SHEEHAN, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHAEL JOHN RYAN, J., CONCUR