[Cite as *Beachwood v. Pearl*, 2018-Ohio-1635.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 105743

**CITY OF BEACHWOOD**

PLAINTIFF-APPELLEE

vs.

**JUSTIN PEARL**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; VACATED IN PART;
AND REMANDED

Criminal Appeal from the
Shaker Heights Municipal Court
Case No. 2016 CRB 00741

**BEFORE:** Celebrezze, J., E.A. Gallagher, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** April 26, 2018

**ATTORNEY FOR APPELLANT**

Eric M. Levy
55 Public Square, Suite 1600
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Thomas F. Greve
Prosecutor, City of Beachwood
Matty, Henrikson & Greve, L.L.C.
55 Public Square, Suite 1775
Cleveland, Ohio 44113



FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Justin Pearl ("appellant"), brings this appeal challenging his conviction and the trial court's sentence for cruelty to companion animals. Specifically, appellant argues that the trial court erred by finding him guilty of violating Beachwood Codified Ordinances ("B.C.O.") Section 618.051(c)(5) because he was charged with violating Section 618.051(c)(2) in the complaint; the trial court presumed his guilt based on statements he made to the responding officer violating his Fifth Amendment privilege against self-incrimination; the trial court erred by arbitrarily disregarding the uncontradicted testimony of the defense's expert witness; his conviction was not supported by sufficient evidence and is against the manifest weight of the evidence; and the trial court erred by sentencing him to probation in its sentencing entry without imposing the sentence in open court. After a thorough review of the record and law, this court affirms in part, vacates in part, and remands for further proceedings consistent with this opinion.

# I. Factual and Procedural History

{¶2} The instant matter arose from a July 28, 2016 incident during which appellant parked his vehicle and left his two dogs in the vehicle in a parking lot on Chagrin Boulevard in Beachwood, Ohio. Appellant had an appointment scheduled for 2:30 p.m., however he was running a few minutes late. The temperature was approximately 84 degrees at the time of the incident. The windows of appellant's vehicle were cracked open one or two inches.

{¶3} Lisa Friedman worked in the area and noticed the dogs in appellant's vehicle around 2:43 p.m. She became concerned about the dogs' safety and believed that it was too hot outside for the dogs to be confined in the vehicle. As a result, she called the Beachwood Police Department and her sister, Lori Sustin, who also worked in the area.

{¶4} Beachwood Police Officer Monica Svigel responded to the parking lot where appellant's vehicle was parked. Officer Svigel was eventually able to identify appellant as the owner of the vehicle in which the dogs were confined. A police dispatcher contacted appellant and advised him to return to his vehicle. When appellant returned to his vehicle, the dogs had been confined for at least 40 minutes. At this point, Officer Svigel made the decision to arrest appellant for cruelty to companion animals.

{¶5} Appellant was charged in a one-count complaint with cruelty to companion animals, in violation of B.C.O. 618.051(c). As will be discussed in further detail below, the complaint alleged that appellant violated subsection (c)(2) but incorporated the language set forth in subsection (c)(5). Appellant was arraigned on August 16, 2016. He pled not guilty to the complaint.

{¶6} A bench trial commenced on November 28, 2016. The city presented the testimony of the two eyewitnesses and the responding police officer. At the close of the city's

case-in-chief, appellant moved for a Crim.R. 29 judgment of acquittal, which the trial court denied.

{¶7} The defense called three witnesses: (1) Paul Shaughnessy, an expert in the field of canine health and transportation, (2) appellant's wife, Nikoline Larson,[1] and (3) appellant. The bench trial concluded on December 5, 2016. The trial court ordered the parties to submit written closing arguments.

{¶8} The trial court issued a judgment entry on March 3, 2017, finding appellant guilty of cruelty to companion animals. The judgment entry included findings of fact and conclusions of law.

{¶9} On March 20, 2017, appellant filed a motion to set aside the trial court's verdict and for a judgment of acquittal pursuant to Crim.R. 29(C). The trial court issued a judgment entry on March 29, 2017, denying appellant's motion.

{¶10} The trial court held a sentencing hearing on April 3, 2017. The prosecutor and defense counsel addressed the court. The trial court imposed a $500 fine and suspended $300 of the fine on the condition that appellant did not have any additional dog charges in the next 12 months.

{¶11} On April 3, 2017, the trial court issued a sentencing judgment entry in which it (1) imposed a $500 fine plus court costs; (2) terminated the administrative license suspension; (3) placed appellant on inactive probation for one year; and (4) suspended $300 of the $500 fine on the condition that appellant does not have any similar convictions or dog violations during the one-year probationary period.

---

[1] Appellant and Larson were not married at the time of the July 28, 2016 incident.

**{¶12}** On April 18, 2017, appellant filed a motion for the trial court to issue a nunc pro tunc sentencing entry reflecting that the trial court did not place him on probation. The trial court issued a judgment entry on April 27, 2017, denying appellant's motion for a nunc pro tunc sentencing entry.

**{¶13}** Appellant filed the instant appeal challenging the trial court's judgment on May 3, 2017. He assigns six errors for review:

> I. The trial court erred when it found appellant guilty of violating Ord. 618.051(C)(2) as charged despite making its findings under the elements set forth in Ord. 618.051(C)(5) for which the court was without jurisdiction.
>
> II. The trial court erred when it imposed a sentence of inactive probation in its judgment entry that was not imposed at the sentencing hearing.
>
> III. The trial court erred when it specifically indicated in its written opinion that it considered appellant's not providing evidence and remaining silent when questioned by police as an indication of his guilt.
>
> IV. The trial court erred and abused its discretion by arbitrarily disregarding uncontradicted expert testimony.
>
> V. The trial court erred in finding appellant guilty of cruelty to companion animals where the evidence presented at trial was insufficient to overcome appellant's Crim.R. 29 motion and to support a conviction at the close of evidence.
>
> VI. The trial court erred in finding appellant guilty of cruelty to companion animals after a bench trial where the manifest weight of the evidence did not support appellant's convictions.

For ease of discussion, we will address appellant's assignments of error out of order.

## II. Law and Analysis

### A. Jurisdiction

**{¶14}** In his first assignment of error, appellant argues that the trial court erred by finding him guilty of cruelty to companion animals, in violation of B.C.O. 618.051(c)(2), as charged in the complaint, because the trial court's findings pertained to cruelty to companion animals in

violation of B.C.O. 618.051(c)(5). Appellant contends that the trial court did not have jurisdiction to find him guilty of violating B.C.O. 618.051(c)(5) because the complaint alleged that appellant violated B.C.O. 618.051(c)(2). Appellant essentially argues that the trial court found him guilty of the wrong ordinance.

{¶15} Initially, we note that defense counsel did not object to the trial court's jurisdiction below. Accordingly, we review for plain error. *State v. Murphy*, 91 Ohio St.3d 516, 532, 747 N.E.2d 765 (2001), quoting *State v. Childs*, 14 Ohio St.2d 56, 62, 236 N.E.2d 545 (1968) ("Even constitutional rights 'may be lost as finally as any others by a failure to assert them at the proper time.'"). Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We are mindful that notice of plain error "'is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶16} In support of his argument that the trial court found him guilty of the wrong subsection of B.C.O. 618.051(c), appellant contends that (1) the wrong subsection was cited in the complaint and the trial court's March 3, 2017 judgment entry, (2) the complaint cited the wrong degree of the offense with which he was charged, and (3) the wrong offense was cited in the trial court's April 3, 2017 sentencing entry.

{¶17} First, regarding the complaint, the offense "cruelty to companion animals" was listed at the top of the complaint. Immediately beneath this offense, the complaint cited B.C.O. 618.051(c)(2). The body of the complaint also alleged that appellant violated B.C.O. 618.051(c)(2). Despite the citations to B.C.O. 618.051(c)(2) at the top and in the body of the complaint, the body of the complaint incorporated the language set forth in B.C.O. 618.051(c)(5),

not (c)(2). The body of the complaint alleged that appellant "did negligently deprive his two (2) dogs of water while confining them in a hot vehicle during 84 degree weather. Witnesses advised the dogs were in the car for approximately 40 minutes."

{¶18} The top of the complaint stated that the offense with which appellant was charged was a misdemeanor of the first degree. B.C.O. 618.051(f)(2) provides that "[w]hoever violates [B.C.O. 618.051(c)] is guilty of a misdemeanor of the second degree on a first offense and a misdemeanor of the first degree on each subsequent offense."

{¶19} Second, the trial court's March 3, 2017 judgment entry stated that appellant was charged with violating B.C.O. 618.051(c)(2). However, the judgment entry incorporates the language from B.C.O. 618.051(c)(5). In the body of the judgment entry, the trial court found appellant guilty of the offense of cruelty to companion animals, without citing the specific subsection of B.C.O. 618.051(c).

{¶20} Third, the trial court's April 3, 2017 sentencing judgment entry states that appellant was charged with "cruelty to animals." This offense, however, is governed by B.C.O. 618.05, not B.C.O. 618.051.

{¶21} Appellant argues that he could not have reasonably known what offense — a violation of B.C.O. 618.051(c)(2) or a violation of B.C.O. 618.051(c)(5) — that he was being charged with. He further emphasizes that these subsections have different elements. Appellant asserts that he raised this issue to the trial court in his written closing argument and that neither the court nor the city amended the complaint to reflect the correct subsection of B.C.O. 618.051(c).

{¶22} The city concedes that the complaint erroneously cited B.C.O. 618.051(c)(2) as the offense with which appellant was charged. The city argues, however, that appellant had

adequate notice that he was charged for violating B.C.O. 618.051(c)(5), and thus, appellant was not prejudiced by the "numerical designation error." After reviewing the record, we agree with the city.

{¶23} It is undisputed that the elements of a violation of B.C.O. 618.051(c)(2) and (c)(5) are different. B.C.O. 618.051(c)(2) provides that "[n]o person who confines or who is the custodian or caretaker of a companion animal shall negligently * * * [o]mit any act of care by which unnecessary or unjustifiable pain or suffering is caused, permitted or allowed to continue, when there is a reasonable remedy or relief, against the companion animal[.]" B.C.O. 618.051(c)(5) provides,

> [n]o person who confines or who is the custodian or caretaker of a companion animal shall negligently * * * [d]eprive the companion animal of necessary sustenance, confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water, or impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight, if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation, confinement, or impoundment in any of those specified manners.

{¶24} Although the complaint alleged that appellant violated B.C.O. 618.051(c)(2), a review of the complaint reflects that the citation to B.C.O. 618.051(c)(2) was merely a typographical error. The complaint incorporated the language of B.C.O. 618.051(c)(5), not (c)(2). Similarly, although the trial court's March 3, 2017 judgment entry states that appellant was charged with violating B.C.O. 618.051(c)(2), the trial court cites the language set forth in B.C.O. 618.051(c)(5), and the trial court's findings of fact and conclusions of law pertain to the elements of subsection (c)(5), rather than the elements of subsection (c)(2). Accordingly, it is evident that the trial court's citation to B.C.O. 618.051(c)(2) was merely a typographical error.

**{¶25}** Appellant's assertion that he could not have reasonably known which subsection he was being charged with is unsupported by the record. Defense counsel's written closing argument demonstrates that although the complaint and the city's initial closing argument cited B.C.O. 618.051(c)(2), appellant was aware that he was being prosecuted for violating B.C.O. 618.051(c)(5). Defense counsel's closing argument provides, in relevant part, "[t]hough the [p]rosecution, in closing, alleges to charge [appellant] with a violation of 618.051(c)(2), it actually quotes and makes allegations based on Section 618.051(c)(5). However, there is no need to harp on *what is likely a simple typographical error*." (Emphasis added.) In the city's final closing argument, the prosecutor confirmed that appellant was correct in that the applicable subsection of B.C.O. 618.051 was (c)(5), not (c)(2).

**{¶26}** Based on the foregoing analysis, we find that appellant failed to demonstrate that he was prejudicially misled as a result of the numerical errors regarding the subsection of the cruelty to companion animals offense with which he was charged and convicted. Accordingly, appellant's first assignment of error is overruled.

**{¶27}** It is well established that a trial court speaks through its journal entries. *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 12. A trial court may correct clerical errors in its journal entries at any time in order to conform to the transcript of the proceedings. *State v. Lugo*, 8th Dist. Cuyahoga No. 103893, 2016-Ohio-2647, ¶ 3, citing *State v. Steinke*, 8th Dist. Cuyahoga No. 81785, 2003-Ohio-3527, ¶ 47; Crim.R. 36. Trial courts retain continuing jurisdiction to correct clerical errors in judgments with a nunc pro tunc entry to reflect what the court actually decided. *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 18-19.

**{¶28}** Because the trial court's March 3, 2017 judgment entry erroneously states that

appellant was charged with violating B.C.O. 618.051(c)(2), and because the trial court's April 3, 2017 sentencing judgment entry erroneously states that appellant was charged with "cruelty to animals" rather than "cruelty to companion animals," we remand the matter to the trial court for the limited purpose of issuing nunc pro tunc journal entries that accurately reflect the offense with which appellant was charged and convicted.

## B. Right to Remain Silent

{¶29} In his third assignment of error, appellant takes issue with testimony elicited by the prosecution and comments in the city's opening and closing arguments regarding appellant not having water or a ventilation system in his vehicle. Appellant argues that the testimony and statements were based on the fact that he did not specifically inform the responding police officer that he had water or a ventilation system in his vehicle. He contends that the trial court committed plain error by considering his failure to make a statement regarding water or a ventilation system in his vehicle as an indication of his guilt. We disagree.

{¶30} It is well established that opening and closing statements are not evidence. *Peffer v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, ¶ 27. Appellate courts presume that in a bench trial, a trial court considered only relevant and admissible evidence. *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61; *State v. Chandler*, 8th Dist. Cuyahoga No. 81817, 2003-Ohio-6037, ¶ 17.

{¶31} Initially, we note that when appellant returned to his vehicle in the parking lot, he did not remain silent or invoke his constitutional rights to remain silent or against self-incrimination. Rather, appellant freely and voluntarily engaged in a conversation with Officer Svigel.

{¶32} During this conversation, Officer Svigel stated that there were two dogs in

appellant's vehicle that were panting without access to water. Appellant did not specifically address or dispute Officer Svigel's assertion that the dogs did not have water. Rather, he stated that (1) whenever he leaves the dogs in the car he turns the car on at different times, (2) while he was in his appointment, he had remotely started his vehicle and his vehicle had been running, (3) when he starts his vehicle remotely, it turns off after 15 minutes, and (4) he had the windows of his vehicle open.

{¶33} The prosecution did not comment or elicit testimony regarding appellant's silence or failure to profess his innocence. As noted above, appellant did not remain silent and he did, in fact, profess his innocence. On direct examination, the prosecutor asked Officer Svigel, "from the time [appellant] came out [to his vehicle in the parking lot], what did he do and what did he say?" (Tr. 81.) The following exchange took place:

THE PROSECUTOR: Did [appellant] offer to show you or did he show you at any point in time while you were present on the scene that there was water that had been provided to his two dogs?

OFFICER SVIGEL: No.

THE PROSECUTOR: At any time while [appellant] was on the scene, did he show you any of the mechanization or any special way his truck had been built to provide sustenance or water to his two dogs?

OFFICER SVIGEL: No. In fact, when I advised him that he was going to be under arrest, he tried to articulate that he did periodically start his truck; and I explained that we have witness statements saying he didn't. And then he further explained, Well, the windows were cracked. And I said, Well, it's still hot. And that was the end of his argument about the comfortability of his dogs. He never elaborated on water in the vehicle or any specifications to the vehicle to indicate comfortability for the animals.

THE PROSECUTOR: Did he indicate to you he had any type of special ventilation system while he was present on the scene at any time involving his two dogs being inside of his vehicle?
OFFICER SVIGEL: He did not. He only indicated that he could remote start his vehicle for air conditioning purposes.

(Tr. 83-84.)

{¶34} On direct examination, appellant testified that "there's a cup holder between the [back] seats, which is where I put water in for the — for the dogs. It sits in — there's two very large cup holders which fit exactly one full water bottle. More than that little water bottle there, it fits in the cup holder." (Tr. 164.) Appellant testified that he had water in these cup holders when he went into his appointment on July 28, 2016.

{¶35} The trial court did not find appellant's testimony that the dogs had access to water inside the vehicle and that a ventilation system was operating inside the vehicle to be credible. The trial court's judgment entry provides, in relevant part,

> During their confinement, the dogs could be seen panting profusely and with dried out tongues. No water was visible with the dried out tongues giving indication that they had not been drinking water although one of the dogs attempted to take water from a witness. The only contradictory testimony about the availability of water was offered by [appellant] at trial saying that the cup holders in the truck contained water. The fact that this was stated for the first time at trial makes the testimony on this point less credible carrying less weight with the court.
>
> * * *
>
> [Appellant] offered testimony that the truck had been modified with an automatic air fan system. Yet, this system is never heard to be running during the time the witnesses or police officer were near the truck and awaiting [appellant's] return. It is also noteworthy that as soon as [appellant] approached the truck in response to the officer's call, he *did remotely start the truck for the first time*. If the interior automatic fan system were sufficient, there would have been no need to start the truck upon his approach. [Appellant] only returned to the truck at 3:25 p.m., because he was summoned by the police.

(Emphasis sic.)

{¶36} After reviewing the record, we find no merit to appellant's assertion that the trial court presumed he was guilty based on his failure to inform Officer Svigel that the dogs had access to water inside the vehicle or that he had a ventilation system that was operating. Rather,

the trial court concluded that appellant's testimony that the dogs had access to water and that a ventilation system was operating inside his vehicle was not credible based on the prior statements that appellant voluntarily made to Officer Svigel at the time of the incident, the testimony of eyewitnesses Friedman and Sustin, and the testimony of Officer Svigel. The trial court's credibility determination on this point does not run afoul to the Fifth Amendment or appellant's privilege against self-incrimination. Accordingly, appellant's third assignment of error is overruled.

### C. Expert Testimony

{¶37} In his fourth assignment of error, appellant argues that the trial court abused its discretion by arbitrarily disregarding the testimony of the defense's expert witness, Paul Shaughnessy. Shaughnessy was recognized as an expert in the field of canine health and transportation. He was not present at the scene at the time of the incident; however, he reviewed the video footage from Officer Svigel's body camera. He also examined appellant's vehicle after-the-fact and without appellant's dogs inside. Shaughnessy described a "water system" and a "ventilation system" that appellant has in his vehicle.

{¶38} Regarding the "water system," Shaughnessy explained that when he stood outside the vehicle and looked through the windows, he could not identify any water inside the vehicle. However, when he opened the doors and examined the inside of the vehicle, he discovered that the cup holders in the backseat were filled with water. Shaughnessy stated that appellant uses the cup holders as a "water reservoir" for the dogs. He explained that you cannot see the water in the cup holders by simply looking through the windows. He could not definitively state, however, that the cup holders were filled with water when the dogs were confined in appellant's vehicle on July 28, 2016.

**{¶39}** Shaughnessy also testified about the "ventilation system" that appellant installed in his vehicle. He explained that you cannot see the ventilation system by simply looking through the windows. The ventilation system is underneath the vehicle's floorboards and it pulls cool air from underneath the vehicle into the car. When the ventilation system is activated, it makes a "humming noise," and the system is "very quiet." He asserted that the ventilation system can activate even when the vehicle is turned off. He explained that the ventilation system is a standard piece of equipment in police vehicles. Shaughnessy testified that the ventilation system that appellant had in his vehicle *could* keep the dogs safe if they were confined for a 40-minute time period. He could not definitively state, however, that the ventilation system was, in fact, on when the dogs were confined in appellant's vehicle on July 28, 2016.

**{¶40}** Based on his review of the video footage, he opined that (1) the dogs were not exhibiting behaviors that led him to believe they were in heatstroke or in any danger at the time they were confined in appellant's vehicle; and (2) if the dogs were confined in appellant's vehicle in 85-degree heat, without water and a ventilation system, it is very possible they would have been in great danger and could possibly even have died.

**{¶41}** Shaughnessy hypothesized that when the dogs were confined in appellant's vehicle on July 28, 2016, either the ventilation system was on or the dogs had access to water inside the vehicle. On cross-examination, Shaughnessy asserted that it would be dangerous to confine the dogs in the vehicle without a ventilation system and access to water when the temperature outside was 85 degrees. (Tr. 188.)

**{¶42}** In support of his argument that the trial court abused its discretion by arbitrarily ignoring Shaughnessy's testimony, appellant directs this court to *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905. In *White*, the Ohio Supreme Court explained,

[w]hile the trial court is the trier of fact, it may not disregard credible and uncontradicted expert testimony in favor of either the perceptions of lay witnesses or of the court's own expectations * * *. Doing so shows an arbitrary, unreasonable attitude toward the evidence before the court and constitutes an abuse of discretion.

*Id.* at ¶ 74.

The trier of fact cannot "weigh" witness testimony and assess its "credibility,"

unless there are conflicts in the evidence or questions of credibility to be resolved.

 *See* [*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)], citing

[*State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983)].

For example, the trier of fact may reject an expert's opinion based on the

contradictory opinion testimony of another expert or *the expert's own concessions*

*during cross-examination that question the credibility of his opinion. See, e.g.,*

*State ex rel. Unger v. Indus. Comm.*, 70 Ohio St.3d 672, 676, 640 N.E.2d 833

(1994); *State v. Pierce*, 64 Ohio St.3d 490, 500-501, 597 N.E.2d 107 (1992).

The trier of fact "may not disregard credible and uncontradicted expert

testimony[.]"  [*White* at ¶ 74].

(Emphasis added.)  *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2016-Ohio-7461, 64

N.E.3d 1018, ¶ 26 (9th Dist.).

While a trial court cannot "arbitrarily" ignore an expert opinion, it may reach a contrary conclusion if there are "some reasons * * * objectively present" in the record to do so. *State v. Brown*, 5 Ohio St.3d 133, 135, 449 N.E.2d 449 (1983). Thus, an expert's opinion is not conclusive, even if uncontradicted by another expert. *Id.*; *see* [*White* at ¶ 71] (holding that the trial court is not required to accept an expert's opinion when there is some objectively present reason for ignoring it).

*State v. Walker*, 1st Dist. Hamilton No. C-150757, 2017-Ohio-9255, ¶ 14.

{¶43} After reviewing the record in the instant matter, we find that the trial court did not

ignore or disregard Shaughnessy's testimony. Rather, the record reflects that the trial court determined that his testimony was not credible. Furthermore, we find that there were objectively present reasons based upon which the trial court could reject Shaughnessy's conclusions and hypothesis and make its own determination as to whether it could reasonably be expected that appellant's dogs would become sick or suffer as a result of appellant's negligence.

{¶44} First, in *White*, "the trial court's rejection of the expert testimony was not based on any credibility determination." *Id.* at ¶ 73. In this case, unlike *White*, the trial court found that Shaughnessy's testimony was not credible because he was not at the scene and did not observe the dogs firsthand while they were confined inside appellant's vehicle. It is undisputed that Shaughnessy was not present at the scene and did not observe the dogs in appellant's vehicle firsthand. Shaughnessy's observations were based on his review of the video footage recorded by Officer Svigel's body camera and his subsequent examination of appellant's vehicle. During cross-examination, Shaughnessy acknowledged that "with [the body camera video], we could not see in the car." (Tr. 191.) He conceded that he could not clearly see into the vehicle from the video footage. Shaughnessy explained that the first time he actually sees the dogs on the video is when they exit the vehicle after arriving at appellant's house.

{¶45} Second, we find that there were objectively present reasons based upon which the trial court could reject Shaughnessy's testimony and hypothesis. As noted above, Shaughnessy hypothesized that when the dogs were confined in appellant's vehicle, either the ventilation system was on or the dogs had access to water inside the vehicle. This hypothesis is contradicted by the eyewitness testimony of Friedman, Sustin, and Officer Svigel.

{¶46} Friedman testified that from the time she arrived on the scene until appellant returned to the parking lot, appellant's car never went on and that "[t]here was no sounds coming

from that car. Had the car been running, I would not have called the police." (Tr. 24.) When defense counsel asked if she would have been concerned if she knew that there was a ventilation system in the car, Friedman asserted that she did not hear "anything going" in appellant's vehicle. (Tr. 42.) Friedman also testified that she did not see any evidence that there was water inside the vehicle.

{¶47} Sustin testified that she did not hear any fan noise inside appellant's vehicle and that the car never started the entire time she was outside in the parking lot. She testified that she "looked in the vehicle over and over again from different points of view," and that there was not water inside the vehicle. (Tr. 69.)

{¶48} Officer Svigel testified that she did not see any water in either the front or back seat. She did not observe the dogs having access to water or sustenance while she was on scene waiting for appellant to return to his car. Officer Svigel asserted that she did not feel any wind circulating into the vehicle when she stuck her hand inside. Officer Svigel explained that she looked inside the vehicle in order to determine whether the dogs had access to any food or water. She did not see any water inside the vehicle.

{¶49} The testimony of Friedman, Sustin, and Officer Svigel regarding the lack of water inside the vehicle is supported by the witnesses' observations that the dogs' tongues were "bone dry."

{¶50} To the extent that appellant argues that the ventilation system was activated while he was in his appointment, this argument is unsupported by the record. Because the ventilation system pulls air from underneath the vehicle into the vehicle, Shaughnessy explained that there would be a "fume factor" if the ventilation system kicked on when the car was running. In other words, if the vehicle was running, then the ventilation system could, in theory, bring potentially

harmful fumes from underneath the vehicle and circulate them inside the vehicle. However, he opined that the ventilation system would be effective as long as the car was not running.

{¶51} Assuming that appellant had the ventilation system in his vehicle on July 28, 2016, and that the ventilation system worked even if the vehicle was off, there would be no need for appellant to remotely start his vehicle while he was in his appointment. However, appellant advised Officer Svigel that he remotely started his vehicle while he was in his appointment, and he remotely started the vehicle as he exited the building and returned to the parking lot. If appellant had remotely started his vehicle while he was in his appointment, as he claimed, and the ventilation system was on, as Shaughnessy hypothesized, then the dogs could have been in danger when the fumes from underneath the vehicle were circulated into the vehicle.

{¶52} Shaughnessy's hypothesis that the ventilation system was on while appellant was in his appointment is also contradicted by Officer Svigel's testimony. Officer Svigel testified that she reached her hand inside the vehicle to determine how hot it was inside. Officer Svigel concluded that "[t]he interior of the vehicle was significantly hotter than the exterior of the vehicle." (Tr. 78.) She also asserted that she did not feel any wind circulating into the vehicle when she stuck her hand inside. Had the ventilation system been working, as Shaughnessy hypothesized, the temperature inside the vehicle should have been cooler than the temperature outside.

{¶53} Finally, Shaughnessy opined that the dogs would not be adversely impacted if they were confined in the vehicle for 40 to 60 minutes if the temperature inside the vehicle was 90 to 95 degrees. Officer Svigel estimated, however, that when the temperature outside was 80 to 85 degrees, the temperature inside the vehicle would have been between 118 and 123 degrees after 40 minutes. (Tr. 96.)

**{¶54}** After reviewing the record, we cannot say the trial court abused its discretion in determining that the eyewitnesses were in a better position to view the dogs than Shaughnessy. The dogs cannot be clearly and consistently observed in the body camera video footage. The view of the dogs and the inside of appellant's vehicle is obstructed by (1) the windows, which were cracked one or two inches, (2) the tint of the rear windows, and (3) the reflection off of the windows. Furthermore, Officer Svigel is constantly moving around while her body camera is recording. She is interacting with Sustin and Friedman, and she is walking back and forth between appellant's vehicle and her police cruiser. For all of these reasons, the trial court reasonably concluded that Officer Svigel, who was present at the scene and observing the dogs firsthand, was in a better position to view the dogs and their behavior than Shaughnessy.

**{¶55}** To the extent that appellant argues that the trial court disregarded Shaughnessy's testimony in favor of Officer Svigel's testimony regarding whether the dogs were exhibiting signs of heatstroke or dehydration, this argument is not supported by the record. In the trial court's judgment entry, the trial court stated that while the dogs were confined inside the vehicle, they "could be seen panting profusely and with dried out tongues. No water was visible with the dried tongues giving indication that they had not been drinking water[.]" Appellant emphasizes, citing Shaughnessy's testimony, that profuse salivation, a bright red tongue, dizziness, and lethargy are signs of heatstroke and/or dehydration. Shaughnessy asserted that a dry tongue is not indicative of a heatstroke and that it is normal for dogs to have dry tongues or tongues that are not excessively dripping. On the other hand, Officer Svigel asserted that the dogs' bone-dry and whiteish tongues, lack of drool or saliva, and profuse panting were signs of heatstroke and dehydration.

**{¶56}** After reviewing the record, we find that the trial court referenced "dried" and "dried out" tongues in its judgment entry as an indication that the dogs did not have access to water inside the vehicle — not as an indication that the dogs were having a heatstroke or were dehydrated.

**{¶57}** Based on the foregoing analysis, we cannot say that the trial court arbitrarily disregarded Shaughnessy's testimony. Although the city did not present expert testimony contradicting Shaughnessy's testimony, the trial court determined that Shaughnessy's testimony was not credible because he was not at the scene and did not observe the dogs firsthand. Furthermore, we find that there were objectively present reasons based upon which the trial court could reject Shaughnessy's testimony and reach a contrary conclusion as to whether it could reasonably be expected that the dogs would become sick or suffer as a result of appellant's negligence. First, the testimony of Friedman, Sustin, and Officer Svigel contradicted Shaughnessy's theory that there was water inside the vehicle or the ventilation system was on. Second, Shaughnessy's concessions that he did not observe the dogs firsthand, that he could not clearly see the dogs or the inside of appellant's vehicle on the body camera video, and that he did not actually see the dogs until they jumped out of the car in appellant's driveway question the credibility of his opinion. Accordingly, we find no basis to conclude that the trial court abused its discretion. Appellant's fourth assignment of error is overruled.

### D. Sufficiency

**{¶58}** In his fifth assignment of error, appellant argues that the trial court erred by denying his Crim.R. 29 motion for a judgment of acquittal and that his conviction for cruelty to companion animals was not supported by sufficient evidence.

**{¶59}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. *Cleveland v. Pate*, 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571, ¶ 12. We conduct the same analysis in reviewing a trial court's ruling on a Crim.R. 29 motion and a challenge to the sufficiency of the evidence. *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus.

**{¶60}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266,

2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Thompkins,* 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶61} In the instant matter, appellant was convicted of cruelty to companion animals in violation of B.C.O. 618.051(c)(5), which provides in relevant part,

[n]o person who confines or who is the custodian or caretaker of a companion animal shall negligently * * * [d]eprive the companion animal of necessary sustenance, confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water, or impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight, if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation, confinement, or impoundment in any of those specified manners.

{¶62} Appellant argues that the city failed to establish that he either (1) negligently deprived his dogs of sufficient quantities of water and that it could reasonably be expected that his dogs would become sick of suffer as a result of the deprivation, or (2) negligently confined his dogs without affording them with shelter from heat and that it could reasonably be expected that his dogs would become sick or suffer as a result of the confinement. Appellant suggests that the city was required to present (1) expert testimony regarding whether it could reasonably be expected that his dogs would become sick or suffer as a result of being deprived of sufficient

quantities of water or being confined in heat; (2) testimony regarding what quantity of water would be sufficient for the dogs under the conditions on July 28, 2016; (3) expert testimony regarding how long the dogs could safely be confined in the vehicle on a cloudy day when the temperature was 85 degrees; and (4) expert testimony regarding the temperature inside the vehicle under the conditions present on July 28, 2016. Appellant further suggests that the city was required to establish that the dogs did not have access to sufficient quantities of water on the day of July 28, 2016 — not merely when they were confined inside the vehicle. We disagree.

**{¶63}** As noted above, the city was required to establish that it could *reasonably be expected* that the dogs would become sick or suffer as a result of appellant's negligence. The city was not, as appellant suggests, required to establish to a degree of scientific or professional certainty that the dogs could or did, in fact, become sick or suffer.

**{¶64}** Appellant cites *State v. Dixon*, 6th Dist. Huron No. H-05-021, 2006-Ohio-2114, for the proposition that expert testimony from a veterinarian is required to establish a conviction for cruelty to animals. Appellant's reliance on *Dixon* is misplaced. In fact, the Sixth District noted that none of the state's witnesses formally testified as expert witnesses. *Id*. at ¶ 15. Furthermore, the court explained that "a lay person may give opinion evidence based upon observed facts." *Id*. at ¶ 16, citing *Am. Louisiana Pipe Line Co. v. Kennerk*, 103 Ohio App. 133, 144 N.E.2d 660 (6th Dist.1957).

**{¶65}** After reviewing the record, we find that the city's evidence, if believed, was sufficient to support appellant's conviction. The city's three eyewitnesses — Friedman, Sustin, and Officer Svigel — all reasonably expected, based on their observations, that the dogs would become sick and/or suffer as a result of appellant's negligence.

**{¶66}** First, regarding Officer Svigel's testimony, appellant argues that the city attempted to elicit expert testimony from Officer Svigel even though she was not qualified to testify as an expert. Specifically, appellant asserts that Officer Svigel testified about the temperature inside the vehicle without having an actual understanding of the subject matter. He further contends that Officer Svigel was unable to testify whether the dogs had access to sufficient quantities of water inside the vehicle, or whether the dogs consumed sufficient quantities of water throughout the day.

**{¶67}** Initially, we note that appellant did not object to Officer Svigel's testimony during trial. Accordingly, he has waived all but plain error. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 136.

**{¶68}** "Under Evid.R. 701, courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702." *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 74, citing *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737 (2001). This court has consistently recognized that the testimony of a state's witness, who is not presented as an expert, is properly admitted under Evid.R. 701 when (1) the testimony is based on the witness's training or experience, (2) the testimony relates to the witness's personal observations with the investigation, and (3) the testimony is helpful to determine a fact at issue. *See, e.g., State v. Wilkinson*, 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, ¶ 52-53; *Primeau* at ¶ 75; *State v. Cooper*, 8th Dist. Cuyahoga No. 86437, 2006-Ohio-817, ¶ 18.

> Other appellate courts have similarly determined that "some testimony offered by [police] officers is lay person witness testimony even though it is based on the [officer's] specialized knowledge." *State v. Johnson*, 7th Dist. Jefferson No. 13JE5, 2014-Ohio-1226, ¶ 57 (detective's testimony as to gang activity was permissible under Evid.R. 701 based on detective's personal knowledge and

experience in the field); *see also State v. McClain*, 6th Dist. Lucas No. L-10-1088, 2012-Ohio-5264, ¶ 13 (detective's testimony that quantities of narcotics recovered during the execution of the search warrant suggested that they were for sale as opposed to personal use was admissible under Evid.R. 701 as lay person opinion testimony because his testimony was based on his training and experience); *State v. Williams*, 9th Dist. Summit No. 25716, 2011-Ohio-6604, ¶ 11 (officer's testimony that the location was a methamphetamine lab was proper Evid.R. 701 testimony because it was based on personal observation from items taken from garbage and found in the house).

*State v. Calhoun*, 8th Dist. Cuyahoga No. 105442, 2017-Ohio-8488, ¶ 35.

**{¶69}** The record in this case reflects that the city properly laid a foundation for Officer Svigel's testimony and her testimony was directly related to the actions she personally undertook and her personal, firsthand observations at the scene. Officer Svigel testified that she is a member of the Ohio Search Dog Association and that she has a search and rescue canine. Officer Svigel explained that she has been trained on heat factors, inside and outside exposure to heat, and temperatures inside and outside of a vehicle as they relate to the confinement of a child, person, or animal. Officer Svigel asserted that she has previously handled approximately two cases involving children being left inside a vehicle in hot weather and approximately seven or eight cases involving animals being confined inside a vehicle in hot weather.

**{¶70}** Based on her education, training, and experience, she approximated that when it is 80 to 85 degrees outside, the temperature inside a vehicle would be between 118 and 123 degrees after a 40-minute time period. (Tr. 96.) Her approximation was based on an American Veterinary Medical Association study. She testified that this was a dangerous condition for appellant to expose his dogs to and that the dogs suffered from being confined in appellant's vehicle for more than 40 minutes. Aside from the 84-degree temperature, Officer Svigel testified the humidity on July 28, 2016, was 74%, with a maximum humidity of 94% for the day. (Tr. 85.)

{¶71} Officer Svigel testified regarding her observations of appellant's dogs. She explained that the dogs were "panting profusely with very dry, hot tongues." (Tr. 108.) Based on her observations, she believed that the dogs were beginning to become distressed, and that they were showing signs of heatstroke or dehydration. Officer Svigel believed that the dogs were dehydrated based on "[t]he fact that their tongues were bone dry, and they were sticking their faces right up to the glass and not a bit of drool was coming down [the windows], and they were panting profusely, which is what dogs do when they are excessively overheated." (Tr. 108-109.) She asserted that the dogs' tongues were dried out and she described the color of their tongues as "whiteish" rather than pink. (Tr. 109.)

{¶72} Officer Svigel testified that she reached her hand into appellant's vehicle to see if it felt warmer inside the vehicle compared to where she was standing outside the vehicle. After reaching her hand inside the vehicle, she concluded that "[i]t was significantly warmer where my hand was compared to where I was standing outside the vehicle." (Tr. 95.) On cross-examination, defense counsel suggested that it was windy on the day in question. However, Officer Svigel asserted that she did not feel any wind circulating into the vehicle when she stuck her hand inside. Officer Svigel confirmed that the conditions and observations that factored into her decision to arrest appellant were the 84-degree temperature, the duration of the confinement, the lack of access to water, and the condition of the dogs.

{¶73} After review, we find that Officer Svigel's testimony was based on her own personal knowledge and experience as established by the city. Additionally, Officer Svigel's testimony related specifically to her own firsthand observations, her actions on the scene, and why she undertook such actions, i.e., reaching her hand inside the vehicle to determine the temperature inside where the dogs were confined. Officer Svigel's testimony was helpful to

determine a fact in issue — whether appellant was negligent in confining his dogs inside his vehicle on July 28, 2016, without access to water and without shelter from heat, and whether the dogs could reasonably be expected to become sick or suffer as a result of the deprivation or confinement. Accordingly, the trial court neither abused its discretion nor committed plain error in allowing Officer Svigel to testify on these matters.

{¶74} Finally, we note that this was a bench trial. In a bench trial, the trial court is presumed to consider only reliable, relevant, and competent evidence in rendering its decision unless it affirmatively appears to the contrary. *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968). There is nothing in the record before this court indicating that the trial court considered improper evidence. Based on the foregoing analysis, we find that Officer Svigel's testimony alone, if believed, was sufficient to support appellant's conviction for cruelty to companion animals.

{¶75} Second, eyewitnesses Friedman and Sustin also reasonably believed, based on their observations, that the dogs would become sick and/or suffer as a result of appellant's negligence. Friedman described herself as a "dog person" and explained that she has two dogs of her own. She testified that she was worried about the dogs because she thought it was too hot outside to leave the dogs in the car. She tried to give the dogs water because she thought they were in distress and she did not want them to die as a result of being confined in the vehicle. She explained that she would have called the police even if the dogs had access to water inside the vehicle because she felt that the air was hot enough. Friedman explained that it was cloudy, rather than sunny, on July 28, 2016. Nevertheless, she opined that it was "hot enough" to cause the dogs to be in distress.

{¶76} Sustin explained that she is a dog owner.  She currently has two dogs and has owned eight dogs over the years.  She testified that on July 28, 2016, it was very hot outside of appellant's vehicle.  She opined that it would have been "extremely uncomfortable" for the dogs inside the car due to the heat, the fact that the vehicle's windows were not rolled all the way down, and the air conditioning was not on.  Under these circumstances, she considered the condition in which the dogs were confined to be dangerous.  Sustin opined that the dogs were in danger and she was concerned that they were going to die.

{¶77} Sustin testified that even if the dogs had access to water inside the vehicle, it was too hot to confine the dogs inside the vehicle.  She explained, "[i]t was too hot in the car water or not.  You — they say all the time that the heat in a car can fry a dog or a child's brain regardless of whether there's water there.  It was ridiculously hot outside."  (Tr. 70.)  She confirmed that she thought that the dogs were suffering and in danger as a result of being confined in appellant's vehicle.

{¶78} Both lay witnesses, Friedman and Sustin, testified as to their observations of the dogs and based on those observations, both Friedman and Sustin reasonably believed that the dogs were in danger and/or distressed as a result of being confined in appellant's vehicle.  This testimony, if believed, is sufficient to support appellant's conviction.

{¶79} For all of the foregoing reasons, we find that the trial court properly denied defense counsel's motions for a Crim.R. 29 judgment of acquittal, and appellant's conviction is supported by sufficient evidence.  Accordingly, appellant's fifth assignment of error is overruled.

**E. Manifest Weight**

**{¶80}** In his sixth assignment of error, appellant argues that his conviction for cruelty to companion animals is against the manifest weight of the evidence.

**{¶81}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

**{¶82}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶83}** In the instant matter, as noted above, Friedman, Sustin, and Officer Svigel testified that the dogs did not have access to water inside the vehicle, they did not hear or see a ventilation

system operating inside the vehicle, and as a result, they believed that the dogs were suffering and in danger as a result of appellant's negligence.

{¶84} Appellant, on the other hand, testified that after he purchased his vehicle at the end of 2014, he modified it to create a ventilation system, explaining "I set a temperature for the system, and if it goes above — if it goes above a temperature fans come on and they pull air in from beneath the truck and — and into the truck, into the car." (Tr. 168.) He testified that he created the ventilation system for his dogs and to ensure that they would not overheat. He asserted that the ventilation system was in place on July 28, 2016.

{¶85} Appellant testified that the dogs had access to water inside the vehicle. He explained that the cup holders in his truck "are designed to hold two big large cups, are just a reservoir sitting there. So I used — I repurposed that for holding water." (Tr. 219.) Appellant asserted that he poured water into the cup holders for the dogs before he left his vehicle and went into his appointment.

{¶86} In addition to appellant's testimony, Larson, appellant's wife, testified about the ventilation system in appellant's vehicle. She asserted that appellant always keeps water in the vehicle for the dogs. As noted above, Shaughnessy hypothesized that the dogs either had access to water inside the vehicle or that the vehicle's ventilation system was on.

{¶87} In support of his manifest weight challenge, appellant asserts that "there is simply no credible evidence that can be used to prove that [he] was guilty of cruelty to companion animals." Appellant's brief at 30. He challenges the trial court's determinations that (1) the dogs did not have access to water inside the vehicle, (2) appellant's vehicle was neither running nor remotely started when the dogs were confined, and (3) the ventilation or "cooling" system was not operating during the confinement.

**{¶88}** First, appellant argues that the trial court's determination that the dogs did not have access to water inside the vehicle is against the manifest weight of the evidence. Regarding Officer Svigel's testimony that she did not observe any water inside the vehicle, appellant argues that she was only looking for a bowl or saucer of water, and that she did not know that appellant left water for the dogs inside the vehicle's cup holders, nor look to see whether there was, in fact, water inside the cup holders.

**{¶89}** Appellant contends that the evidence presented at trial demonstrated that the dogs were not dehydrated. In support of this argument, appellant asserts that both Shaughnessy and Larson testified that the dogs' dried out tongues did not indicate that the dogs were dehydrated. He further suggests that if the dogs were, in fact, dehydrated, they would have attempted to break through the windows when Sustin attempted to provide water to them through the cracked windows.

**{¶90}** Second, regarding the trial court's finding that appellant's vehicle was neither running nor remotely started while the dogs were confined inside, appellant argues that this finding is insignificant. Appellant asserts that he had the ventilation system in the vehicle, which operated even if the vehicle was not on, and that Shaughnessy opined that the ventilation system could keep the dogs safe.

**{¶91}** Third, regarding the trial court's finding that the ventilation system was not operating while the dogs were confined, appellant argues that the city's witnesses could not have heard the ventilation system from outside the vehicle when the doors were closed. In support of this argument, he emphasizes that Shaughnessy described the sound of the ventilation system as a quiet, humming noise. He further argues that there was no credible evidence regarding the

temperature inside the vehicle, and that Officer Svigel did not inspect the inside of his vehicle nor the ventilation system he installed.

{¶92} Finally, appellant argues that the trial court disregarded the testimony of Larson. Larson testified that she was in the canine unit in the Army. Furthermore, she is a preveterinary student, she works as an intern with a veterinarian, and she volunteers at the Cuyahoga County Animal Shelter.

{¶93} Larson testified that she told appellant to leave the dogs in his car during his appointment on July 28, 2016, because she knew about the ventilation system in his car and she knew that he always keeps water in the car. Larson believed that the dogs were "100% safe" in the car. (Tr. 207.)

{¶94} Larson went to the police station after receiving a call from appellant. Thereafter, she took the dogs to the veterinarian to make sure that they were okay. However, she explained that she did not believe that the dogs were suffering in any way. Larson asserted that she knows the symptoms to look for that indicate a dog is suffering from heat exposure. She explained that heatstroke could cause vomiting and dizziness, thick saliva, and a red tongue.

{¶95} On cross-examination, Larson testified that she put the dogs in appellant's vehicle before appellant left for work in the morning on July 28, 2016. However, she acknowledged that several hours had elapsed between the time that she put the dogs inside appellant's vehicle in the morning and the time that the police officers escorted appellant and his dogs to appellant's house.

{¶96} Larson was not present when appellant arrived at his house with the dogs and the police officers. She testified that the dogs were at appellant's house for approximately two hours before she saw them after the incident and took them to the veterinarian's office. During

this two-hour time period during which the dogs were at appellant's house, the dogs had access to water. The dogs also had access to water between the time that they were confined in appellant's vehicle and the time that Larson took them to the veterinarian's office.

**{¶97}** Larson acknowledged that she was not present with appellant when he went to his appointment. She was not in the vehicle and did not see the vehicle at any time in the afternoon on July 28, 2016. Larson had no direct knowledge regarding the conditions inside appellant's vehicle at the time the police were called to the scene. Specifically, Larson had no direct knowledge regarding whether the dogs had access to water when they were confined in the vehicle during appellant's appointment, or whether the ventilation system in appellant's vehicle was, in fact, operating.

**{¶98}** After reviewing the record in this case, we cannot say that this is "an exceptional case" in which the trial court clearly lost its way and created such a manifest miscarriage of justice that appellant's cruelty to companion animals conviction was against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. First, Friedman, Sustin, and Officer Svigel all testified that they did not observe any water inside the vehicle. This testimony is supported by Officer Svigel's observation that the dogs' tongues were "bone dry." While it is conceivable that (1) there was water in the vehicle's cup holders and (2) the witnesses were unable to observe this water supply from outside the vehicle, the witnesses did not observe the dogs drinking water during the 40-minute period of time that they were on the scene.

**{¶99}** Second, Friedman and Sustin testified that they did not hear any sounds or fan noises inside appellant's vehicle. While it is conceivable that these witnesses were unable to hear the ventilation system, Officer Svigel testified that the temperature inside the vehicle was significantly hotter than the temperature outside, and that she did not feel any wind circulating

into the vehicle.  Officer Svigel approximated that the temperature inside the vehicle was between 118 and 123 degrees.   Had the ventilation system been working, the temperature inside the vehicle should have been cooler than the temperature outside.

{¶100} The defense's theory of the case was that the dogs had access to water inside the vehicle, and thus, appellant did not deprive them of water, and that the vehicle's ventilation system protected the dogs from the heat.   On the other hand, the city's theory of the case was that appellant negligently deprived the dogs of water and confined them in his vehicle without sheltering the dogs from the heat, and that it could reasonably be expected that the dogs would become sick or suffer as a result of appellant's negligence.   Appellant's conviction is not against the manifest weight of the evidence simply because the trial court chose to believe the city's version of the events rather than appellant's.   *See State v. Adhikari*, 2017-Ohio-460, 84 N.E.3d 282, ¶ 55 (8th Dist.).

{¶101} The trial court, as the trier of fact, was in the best position to weigh the credibility of the witnesses.   Although appellant relies heavily on the testimony of Shaughnessy and Larson in support of his manifest weight challenge, these witnesses were not present at the scene, they did not observe the dogs firsthand while they were confined in appellant's vehicle, and they had no firsthand knowledge regarding the conditions under which the dogs were confined.   The trial court was free to find — and clearly did find — the testimony of the city's witnesses to be more credible than the testimony of appellant, Shaughnessy, and Larson.

{¶102} Based on the foregoing analysis, appellant's sixth assignment of error is overruled.

**F. Sentence**

**{¶103}** In his second assignment of error, appellant argues that the trial court erred by imposing a sentence of inactive probation in its sentencing judgment entry without imposing the sentence in open court during the April 3, 2017 sentencing hearing.

**{¶104}** It is axiomatic that a criminal defendant has a fundamental right to be present at all critical stages of his criminal trial, including the imposition of sentence. *State v. Taylor*, 8th Dist. Cuyahoga No. 104243, 2017-Ohio-9270, ¶ 3, citing Section 10, Article I, Ohio Constitution, Crim.R. 43(A), and *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864.

> "A trial court cannot impose a sentence in the sentencing entry that differs from that it imposed at the sentencing hearing." *State v. Vaughn*, 8th Dist. Cuyahoga No. 103330, 2016-Ohio-3320, ¶ 18; *see also State v. West*, 9th Dist. Summit No. 27485, 2015-Ohio-2936, ¶ 49-52 (matter remanded for resentencing where trial court sentenced defendant on drug paraphernalia count in sentencing journal entry after trial court failed to address that count at sentencing hearing); *State v. Jackson*, 1st Dist. Hamilton No. C-140178, 2014-Ohio-5008, ¶ 22 ("a trial court's sentence is contrary to law when it imposes a sentence in the sentencing entry different from the sentence announced at the sentencing hearing")[.]

*State v. Alvelo*, 2017-Ohio-742, 85 N.E.3d 1032, ¶ 35 (8th Dist.).

**{¶105}** In *Cleveland v. Clemons*, 90 Ohio App.3d 212, 628 N.E.2d 141 (8th Dist.1993), this court held that the trial court committed reversible error by imposing an additional condition of probation outside of the defendant's presence. *Id*. at 214. The additional condition required the defendant to submit to random drug testing. This court concluded that Crim.R. 43(A) required the trial court to amend the terms of probation in the physical presence of the defendant. *Id*.

**{¶106}** In the instant matter, appellant argues that the trial court did not sentence him to inactive probation during the sentencing hearing, but the trial court imposed an unspecified term

of inactive probation in its sentencing judgment entry. On the other hand, the city argues that the transcript from the April 3, 2017 sentencing hearing clearly reflects that the trial court sentenced appellant to probation, and that the trial court found that appellant did not need to be monitored on active probation.

{¶107} During the sentencing hearing, the prosecutor conceded that appellant loves and takes excellent care of his dogs. The prosecutor stated that he believes "there's no issue or need for dog education" and that he had full confidence that there would not be any incidents involving appellant's dogs in the future. Defense counsel advised the trial court that appellant prayed for leniency and opined that a fine would be an adequate sentence. Defense counsel explained, "I don't believe that [appellant] is an individual who needs to be monitored on probation." (Tr. 293.)

{¶108} The trial court agreed with the prosecutor's and defense counsel's statements. The trial court imposed the following sentence:

> I am going to suspend $300 of the $500 fine on condition that in the next 12 months there are no further dog charges. And I am also staying the sentence to indicate sentence to be appealed or fines and costs paid within 30 days. So that will allow you and [defense counsel] to discuss what will happen next. But in essence, it's [$]200 and costs, all right.

(Tr. 293-294.)

{¶109} The trial court placed appellant on inactive probation in its April 3, 2017 sentencing judgment entry. The sentencing judgment entry provides, in relevant part, "[s]uspension of $300 of fine * * * on condition that there are no further similar type convictions during the probation period and that defendant successfully complies with *all of the conditions of probation* including paying fines and costs as ordered." (Emphasis added.) There is a

handwritten note stating that $300 of the fine is suspended on the condition that there are "no other dog violations."

{¶110} After reviewing the record, we find that the trial court did not sentence appellant to inactive probation during the sentencing hearing. The trial court made no mention of probation — either active monitoring or inactive — during the sentencing hearing, much less impose a sentence of inactive probation.

{¶111} Although the trial court's sentencing judgment entry references the "conditions of probation," neither probation nor any conditions thereof were discussed or imposed in open court. The only "condition" discussed during the sentencing hearing — that appellant was not charged with any dog offenses in the next year — pertained to the suspension of $300 of the $500 fine, not a sentence of probation.

{¶112} We further find that a sentence of inactive probation cannot be implied from the trial court's conditionally suspended fine. Nor can a sentence of inactive probation be implied from the trial court's statement that it agreed with defense counsel's assertion that appellant did not need to be monitored on probation. Defense counsel did not argue that a sentence of inactive probation would be more appropriate than a sentence of active probation — counsel opined that it was not necessary to sentence appellant to probation and that a fine, rather than probation, was an appropriate sentence.

{¶113} Based on the foregoing analysis, appellant's second assignment of error is sustained. The imposition of inactive probation is vacated.

## III. Conclusion

**{¶114}** After thoroughly reviewing the record, we affirm appellant's conviction for cruelty to companion animals. Appellant failed to demonstrate that he was prejudicially misled as a result of the numerical errors in the complaint and the trial court's March 3, 2017 judgment entry regarding the subsection of the cruelty to companion animals offense with which appellant was charged and convicted. The trial court did not presume that appellant was guilty based on the statements he made to Officer Svigel in the parking lot, and appellant's Fifth Amendment privilege against self-incrimination was not violated. The trial court did not arbitrarily disregard Shaughnessy's expert testimony. Appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.

**{¶115}** The trial court erred by sentencing appellant to inactive probation in its sentencing judgment entry without imposing the probation sentence in open court during the sentencing hearing. Accordingly, the imposition of inactive probation is vacated.

**{¶116}** The trial court's March 3, 2017 judgment entry erroneously states that appellant was charged with violating B.C.O. 618.051(c)(2). Furthermore, the trial court's April 3, 2017 sentencing judgment entry erroneously states that appellant was charged with "cruelty to animals" rather than cruelty to companion animals. Accordingly, we remand this case to the trial court for the limited purpose of issuing nunc pro tunc judgment entries that accurately reflect the offense with which appellant was charged and convicted.

**{¶117}** Judgment affirmed in part; vacated in part; and remanded for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Shaker Heights Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

EILEEN A. GALLAGHER, A.J., and
TIM McCORMACK, J., CONCUR